IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SENSORMATIC ELECTRONICS, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 19-1543 (CFC) (SRF) |
| v. | ) ) | |
| WYZE LABS, INC., | ) ) ) | |
| Defendant. | | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF THEIR MOTION
FOR JUDGMENT ON THE PLEADINGS FOR LACK OF
PATENTABLE SUBJECT MATTER**

OF COUNSEL:

Reuben H. Chen
Lam Nguyen
Dena Chen
Lauren Krickl
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Erik Milch
COOLEY LLP
Reston Town Center
11951 Freedom Drive
14th Floor
Reston, VA 20190
(703) 456-8000

December 23, 2019

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com

*Attorneys for Defendant Wyze Labs, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS .......................1

III.    SUMMARY OF THE ARGUMENT .............................................1

IV.     STATEMENT OF FACTS ..........................................................3

V.      LEGAL STANDARD ................................................................8

VI.     ARGUMENT............................................................................10

    A.      *Alice* Step One: The Asserted Patents are Directed to Abstract Ideas ..................................................................................10

    B.      *Alice* Step Two: The Claims of the Asserted Patents Recite No Inventive Concept.....................................................................18

VII.    CONCLUSION.........................................................................22

# TABLE OF AUTHORITIES

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ........................................................................16

*Affinity Labs of Tex. v. DirectTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ........................................................................11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
   573 U.S. 208 (2014) ..................................................................................*passim*

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...........................................................................................9

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ..................................................................15, 18

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) .........................................................................9

*Callwave Commc'ns, LLC v. AT&T Mobility, LLC*,
   207 F. Supp. 3d 405 (D. Del. 2016) .................................................................12

*Chamberlain Grp. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019) .............................................................2, 11, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) .........................................................................5

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ....................................................................2, 12

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) .......................................................................13

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ....................................................................15, 16

*In-Depth Test, LLC v. Maxim Integrated Prods., Inc.*,
   2018 WL 6617142 (D. Del. Dec. 18, 2018) ..............................................*passim*

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
    752 F. App'x 1024 (Fed. Cir. 2018) ..................................................................4

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ................................................................13, 14

*Inventor Holdings, LLC v. Gameloft, Inc.*,
    135 F. Supp. 3d 239 (D. Del. 2015)................................................................10

*Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*,
    2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016) ........................................2, 12, 14

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
    173 F. Supp. 3d 717 (N.D. Ill. 2016)................................................................13

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*,
    No. 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015) ........................15

*Morsa v. Facebook, Inc.*,
    77 F. Supp. 3d 1007 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915
    (Fed. Cir. 2015)................................................................................................14

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*,
    2015 WL 5156526 (D. Del. Sept. 2, 2015).........................................................15

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008) ..............................................................................8

*Tagi Ventures, LLC v. Nascar Digital Media, LLC*,
    2017 WL 3469527 (N.D. Ga. Feb. 17, 2017)...................................................16

*Trading Techs., Int'l v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019) .......................................................................19

*TTP Tech LLC v. Zebra Techs. Corp.*,
    2019 WL 3935179 (D. Del. Aug. 20, 2019), *appeal filed*, No.19-
    2327 (Fed. Cir. Aug.28, 2019)..........................................................................9

*Two-Way Media, Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) .......................................................................17

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ..........................................................................8

*VideoShare, LLC v. Google, Inc.*,
    2016 WL 4137524 (D. Del. Aug. 2, 2016)...........................................................8

*WhitServe LLC v. Donuts Inc.*,
    390 F. Supp. 3d 571 (D. Del. July 8, 2019)......................................................10

*Williamson v. Citrix Online, LLC*,
    212 F. Supp. 3d 887 (C.D. Cal. 2016), *aff'd*, 683 F. App'x 956
    (Fed. Cir. 2017)...................................................................................................20

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd,* 636 F. App'x 1014 (Fed.
    Cir. 2016) ............................................................................................................13

## Rules and Statutes

35 U.S.C. § 101 ...................................................................................*passim*

Fed. R. Civ. P. 12(c)........................................................................................1, 8, 9

## I.      INTRODUCTION

This action should be dismissed pursuant to Fed. R. Civ. P. 12(c) because the Asserted Patents claim patent-ineligible subject matter under 35 U.S.C. § 101. The patents are directed to the abstract ideas of wireless communication and remote surveillance, and the claims recite only generic computer parts for carrying out those abstract ideas.  The Asserted Patents are therefore invalid under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 573 U.S. 208 (2014) ("*Alice*") and its progeny.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Sensormatic Electronics, LLC ("Plaintiff" or "Sensormatic") filed this action on August 19, 2019, accusing WYZE LABS, INC. ("Defendant" or "WYZE") of infringing U.S. Patent Nos. 7,954,129 ("'129 patent"), 7,730,534 ("'534 patent"), 7,936,370 ("'370 patent"), 8,208,019 ("'019 patent"), 8,610,772 ("'772 patent"), 9,407,877 ("'877 patent"), and 10,198,923 ("'923 patent") (collectively, the "Asserted Patents").[1]  (D.I. 1 ("Complaint"), ¶¶ 6-13.)  WYZE filed an Answer on November 8, 2019.  (D.I. 9.)  WYZE moves for judgment on the pleadings under Fed. R. Civ. P. 12(c) for failure to claim patentable subject matter.

## III.    SUMMARY OF THE ARGUMENT

1.      The claims of the Asserted Patents are directed to the abstract ideas of wireless communication and remote surveillance.  The claims fail to recite any

---

[1]      The Asserted Patents are attached to the Complaint as Exhibits A-G.

improvement to computer technology, instead reciting only generic computer components such as "input capture devices," "digital input recorders," and "remote server computers" for practicing the abstract ideas.

2.      Under a long line of precedent, such claims are invalid under § 101. *See, e.g., Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) (invalidating claims because "the broad concept of communicating information wirelessly, without more, is an abstract idea" and further finding no inventive concept in the claims sufficient to render them non-abstract); *see also Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016) (invalidating claims directed to "the abstract idea of remote surveillance or monitoring for security or control purposes"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) (invalidating "lengthy and numerous" claims directed to "monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results").  Indeed, all seven specifications make clear that the purported invention merely takes the **"wired"** prior art video surveillance systems and makes them **"wireless"**—an abstract idea under *Chamberlain*.  (*See, e.g.,* '129 patent, 1:31-33 ("While video surveillance systems have existed in the prior art, typically they are wired devices that are difficult, time-consuming, and costly to install and operate.").)

## IV.   STATEMENT OF FACTS

The seven Asserted Patents are closely related, share a substantially similar specification, list the same sole inventor, and collectively claim an earliest priority date of September 24, 2004.  The below schematic reflects the relationships among the Asserted Patents, which are all directed to the same general invention[2]:



Additionally, each Asserted Patent is either (1) terminally disclaimed over

---

[2]      "CIP" indicates a patent resulting from one or more "continuation-in-part" application(s), and "CON" indicates a patent resulting from a "continuation" application.

another Asserted Patent or (2) a patent over which another Asserted Patent is terminally disclaimed.[3]   *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 F. App'x 1024, 1034 (Fed. Cir. 2018) (holding that "a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent") (citation omitted).

The Asserted Patents relate generally to "secure surveillance system[s] having wireless communication for monitoring a target environment," and methods of providing those systems.  ('370 patent, Abstract; '772 patent, Abstract; '887 patent, Abstract; '923 patent, Abstract; *see also* '129 patent, 5:34-35, 14:16-17, 16:23-25 (claim 1); '534 patent, 15:34-35.)  All seven specifications explain that "[w]hile video surveillance systems have existed in the prior art, typically they are wired devices that are difficult, time-consuming, and costly to install and operate." ('129 patent, 1:31-33; '534 patent, 1:60-62; '370 patent, 1:33-35; '019 patent, 1:29-31; '772 patent, 1:56-58; '877 patent, 1:22-24; '923 patent, 1:26-28.)

Independent claim 14 of the '129 patent ("the '129 Claim 14") is representative of the claims of the Asserted Patents, and recites the following:

14. A surveillance system for wireless communication between components comprising:

---

[3]     According to the prosecution histories of the Asserted Patents, the '129 patent is terminally disclaimed over the '534 patent; the '534 patent is terminally disclaimed over the '129 patent, the '019 patent, and the '370 patent; the '877 patent is terminally disclaimed over the '772 patent; and the '923 patent is terminally disclaimed over the '877 patent and the '772 patent.

a base system including at least two wireless input capture devices (ICDs), the ICDs having at least one sensor and at least one input component for detecting and recording inputs, a processor, a memory, a transmitter/receiver, all constructed and configured in electronic connection;

wherein the ICDs are operable for direct wireless cross-communication with each other without requiring interaction with a remote server computer for operation; and

wherein the ICDs are operable for direct wireless communication with a remote viewing device operable by an authorized user.

('129 patent, 17:16-28 (claim 14); *see also* Complaint, ¶ 23.)  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding analysis of a "representative claim" sufficient when, as here, the claims are substantially similar and linked to the same abstract idea); *In-Depth Test, LLC v. Maxim Integrated Prods., Inc.*, 2018 WL 6617142, at *2 & n.3 (D. Del. Dec. 18, 2018) (Connolly, J.) (granting motion for judgment on the pleadings under § 101 after treating one claim as "representative" of all asserted claims).

The '129 Claim 14 can be boiled down to a surveillance system with (i) wireless devices for capturing inputs and (ii) a remote server, where the wireless devices can communicate (iii) directly with each other and (iv) with a remote viewing device operated by an authorized user.  In essence, those elements represent the abstract ideas of (1) wireless communication (whether direct or indirect) and (2) remote surveillance for security purposes.

Although the '129 Claim 14 uses technical-sounding jargon like "input capture devices," "sensor," "processor," "transmitter/receiver," and "remote server computer," the basic concept is exceedingly straightforward. The "input capture device (ICD)" merely "sens[es], captur[es], and transmit[s] surveillance inputs"— which are among the most rudimentary computer functions. (*See* '129 patent, 6:58-61.) The specifications confirm that ICDs are pre-existing, commercially-available technologies. (*Id.* at 9:7-14 ("Preferred embodiments of a system according to the present invention includes video technology commercially provided by PIXIM, and set forth under [PIXIM patents].").) Nor does the '129 patent claim to have invented any other element recited in Claim 14. (*See, e.g., id.* at 13:50-55 ("[T]he RSC [remote server computer] is thus any Internet connectable device, including computer, PDA, cell phone, watch, any network accessible device, and the like, which provides access for at least one remote user.").) Instead, the '129 Claim 14 simply invokes generic computer technologies to carry out the underlying abstract ideas of wireless communication and remote surveillance.

The remaining claims of the Asserted Patents provide more details, but do not change the basic concepts. For example, the claimed "digital input recorder

(DIR)"[4] performs the conventional computer functions of "receiving, storing, editing, and/or retrieving stored input" from the ICD (*see, e.g.,* '129 patent, 5:15-17), and is an off-the-shelf "appliance" (*see, e.g., id.* at 10:45) such as a "DVR [digital video recorder]" (*see, e.g., id.* at 10:42-43). Further, the claimed "digital video management and/or recording device (DVM)" ('534 patent, claim 1) is a non-descript element that is "configured and operable in wireless communication with the ICDs" (*id.* at 3:43-45) and "can store the data received from the ICD, report on the data, and take further actions on that data" (*id.* at 3:17-20). Plaintiff thus cannot point to any remotely non-conventional application of the DIR or DVM in the Asserted Patents' specifications.

Still other claims recite additional limitations such as "dual encoding,"[5] "remote viewing device,"[6] "single click-select,"[7] "image tagging or flagging based upon the occurrence of a trigger event,"[8] "changing the priority settings,"[9] "automatic locking,"[10] and "external removable data storage device."[11] However,

---

[4]      '129 patent, claims 1, 6, and 9; '370 patent, claim 1; '019 patent, claims 1, 2, and 7; '772 patent, claims 1 and 16; '877 patent, claims 1 and 16; '923 patent, claims 1, 16, 23, 24, and 25.

[5]      '370 patent, claim 1.

[6]      '129 patent, claims 1, 6, 8, 14, 20, 21, 22; '370 patent, claims 1, 13; '923 patent, claims 20, 23, 25; *see also* '772 patent, claim 2.

[7]      '772 patent, claims 1-9, 14-17; '877 patent, claim 1-10, 12-13, 16-17; '923 patent, claims 1, 2, 7, 9, 10, 11, 16.

[8]      '019 patent, claims 1, 2, 7.

[9]      '772 patent, claim 2; '877 patent, claim 2; '923 patent, claim 2.

[10]      '772 patent, claim 6; '877 patent, claim 7; '923 patent, claim 9.

as explained below, each of these additional limitations is either directed to an abstract idea or was well-known, routine, and conventional in the art as of the earliest priority date of the Asserted Patents, and thus cannot confer patent eligibility. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (finding that claims adding particularity do not alter the "heart" of the claims).

## V.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "When evaluating a motion for judgment on the pleadings, the court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party."  *VideoShare, LLC v. Google, Inc.*, 2016 WL 4137524, at *2 (D. Del. Aug. 2, 2016) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).  Judgment on the pleadings is appropriate where "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau*, 539 F.3d at 221. In ruling on a Rule 12(c) motion, courts may consider the "pleadings and exhibits thereto, and documents incorporated by reference."  *VideoShare*, 2016 WL 4137524, at *2 (citation omitted).

---

[11]     '019 patent, claims 1, 2, 3, 7, 8, 9.

Patent eligibility under 35 U.S.C. § 101 is a "threshold" issue of law. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *TTP Tech LLC v. Zebra Techs. Corp.*, 2019 WL 3935179, at *2 (D. Del. Aug. 20, 2019), *appeal filed*, No.19-2327 (Fed. Cir. Aug. 28, 2019). Courts may properly decide this threshold issue by way of a motion for judgment on the pleadings. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352, 1354-55 (Fed. Cir. 2014) (affirming a Rule 12(c) judgment on the pleadings); *In-Depth Test*, 2018 WL 6617142, at *1, *4-7 (granting motion for judgment on the pleadings finding patent ineligibility).

The Supreme Court in *Alice* set forth the now-familiar two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, the Court must determine if the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Id.* If the Court determines that the claims are directed to an abstract idea, it must then "determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotations and citation omitted). This second step is "a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (internal quotations and citation omitted). A claim reciting merely "well-understood, routine [and]

conventional activities previously known to the industry" cannot provide an inventive concept. *Id.* at 2359 (internal quotations and citation omitted).

## VI.   ARGUMENT

Here, the claims of the Asserted Patents fail both steps of *Alice* because they are directed to abstract ideas and recite no inventive concept. The claims are thus invalid for lack of patent-eligible subject matter.

Notably, five of the seven Asserted Patents issued before *Alice*,[12] and the U.S. Patent and Trademark Office ("USPTO") therefore did not have the benefit of the Supreme Court's two-step test for determining patent eligibility with respect to those patents. *See, e.g., WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 581 (D. Del. July 8, 2019) (Connolly, J.) (noting that "the USPTO proceedings . . . occurred before the Supreme Court's decision in *Alice* and, therefore, were not based on the correct legal standard"); *see also Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 252 (D. Del. 2015) (same).

### A.   *Alice* Step One: The Asserted Patents are Directed to Abstract Ideas

At their core, the claims of the Asserted Patents are directed to the patent-ineligible abstract ideas of (1) wireless communication (whether direct or indirect) and (2) remote surveillance.

---

[12]   The five pre-*Alice* patents are the '129 patent, the '534 patent, the '370 patent, the '019 patent, and the '772 patent.

*First*, the Federal Circuit recently held that "the broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain*, 935 F.3d at 1347. The claims in *Chamberlain* recited a system comprising a "wireless status condition data transmitter." *See id.* at 1345. Similarly here, '129 Claim 14 broadly recites a system for "wireless communication between components" without any restrictions on *how* that wireless communication is accomplished. (*See, e.g.,* '129 patent, claim 14.) All seven specifications make clear that the purported invention merely takes the **"wired"** prior art systems and makes them **"wireless"**—an abstract idea under *Chamberlain*. (*See, e.g.,* '129 patent, 1:31-33 ("While video surveillance systems have existed in the prior art, typically they are wired devices that are difficult, time-consuming, and costly to install and operate.").)

The specifications further confirm that the claimed wireless communication does not improve computer functionality, but instead relies on well-known network protocols. (*See, e.g.,* '534 patent, 3:14-17 ("The ICD transmits the data wirelessly (using network protocols such as 802.11, cellphone protocols such as CDMA or GSM, or any other wireless protocol such as Zigbee, Bluetooth, or other)").) Such claims fail *Alice* step 1. *See Chamberlain*, 935 F.3d at 1347; *see also Affinity Labs of Tex. v. DirectTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (invalidating claims reciting the function of "wirelessly communicating regional broadcast

content to an out-of-region recipient" as directed to an abstract idea).

Wireless communication is an abstract idea whether it is direct (*i.e.*, from device-to-device) or indirect (*i.e.*, through a server). *See Chamberlain*, 935 F.3d at 1349 (invalidating claims using an "integrated controller [*i.e.*, server] and wireless transmitter to transmit status information"). The claims reciting "direct wireless cross-communication" (or the like) are thus drawn to only a subset of wireless communication and are likewise abstract. (*See, e.g.,* '129 patent, claims 8, 14, 15; *see also* '534 patent, claim 1; '370 patent, claims 1, 7; '019 patent, claims 1, 2, 7; '772 patent, claims 1, 16; '877 patent, claim 16; '923 patent, claim 16.) In fact, the concept of communicating directly between devices or individuals is far more basic than communicating indirectly through a server or intermediary, which requires an extra step.

**Second**, the concept of "remote surveillance or monitoring for security or control purposes" is also abstract. *Digital Playground*, 2016 WL 5793745, at *5; *see also Elec. Power Grp.*, 830 F.3d at 1351; *Callwave Commc'ns, LLC v. AT&T Mobility, LLC*, 207 F. Supp. 3d 405, 414-15 (D. Del. 2016) (finding claims directed to "remote tracking" invalid under § 101). The stated purpose of the asserted claims is to "provid[e] a secure surveillance system for a target environment," and the claims expressly recite "surveillance system[s]." (*See, e.g.,* '129 patent, 5:34-35, 14:16-17, 16:23-24 (claim 1); *see also, e.g.,* '129 Claim 14.)

But "[t]he general concept of keeping watch over property is timeless. As early as 31 BC, for example, the Romans monitored and secured their empire through numerous watchtowers, which could communicate through a signaling system." *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 727 (N.D. Ill. 2016); *see also Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015) (invalidating patents directed to the "abstract idea [of] monitoring locations, movements, and load status of shipping containers within a container-receiving yard, and storing, reporting, and communicating this information in various forms through generic computer functions"), *aff'd,* 636 F. App'x 1014 (Fed. Cir. 2016). The claims are thus drawn to a "longstanding [] human activity" that falls "squarely within the realm of abstract ideas." *Alice*, 573 U.S. at 220-21 (internal quotations omitted); *see also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094-95 (Fed. Cir. 2016) (finding claims "directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected" were drawn to patent-ineligible abstract ideas).

Here, "there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *See, e.g., Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318-22 (Fed. Cir. 2016). The '129 Claim 14 recites that "the ICDs are operable for direct wireless

cross-communication with each other without requiring interaction with a remote server computer for operation." ('129 patent, 17:23-25.)  This is no different than the offline human activity of bypassing an intermediary to communicate information directly to the intended recipient.  For example, Neighbor A (i.e., "ICD" A) can send a letter to Neighbor B (i.e., "ICD" B) by either (1) using a mailman (i.e., "remote server computer") or (2) walking across the street and placing the letter in Neighbor B's mailbox.  The latter scenario satisfies the claimed "cross-communication" limitation without the use of any computer technology.  Further, the "surveillance system" limitation recited in the '129 Claim 14 is easily satisfied when the letter pertains to Neighbor A's observations regarding suspicious activities in the neighborhood.  The claims here can be performed by a human being using pen and paper, and thus are decidedly abstract. *Intellectual Ventures I LLC*, 838 F.3d at 1318-22.

The remaining claims of the Asserted Patents either do nothing to alter the underlying abstract ideas of wireless communication and remote surveillance, or constitute abstract ideas themselves.[13]  For example, "dual encoding of system

---

[13]   The combination of two or more abstract ideas does not somehow convert the claimed subject matter into something non-abstract.  *Digital Playground*, 2016 WL 5793745, at *5 ("Simply combining these abstract ideas does not create a non-abstract idea."); *see also Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014) (finding claims invalid under § 101 when directed to "two abstract ideas"), *aff'd,* 622 F. App'x 915 (Fed. Cir. 2015).

inputs"[14] is drawn to the abstract idea of translating information between different formats.  The specification explains that the "dual encoding software run[s] on an embedded DSP chip or a computer" and "encodes inputs captured by the ICD(s) in multiple formats simultaneously."  ('370 patent, 15:41-44; *see also id.* at 15:44-49 (providing an example of "dual encoding" where "a video stream is converted into encoded video and a series of still images").)  But district courts have consistently found the mere concept of "translating" to be an abstract idea.  *See, e.g., Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, 2015 WL 5156526, at *2-3 (D. Del. Sept. 2, 2015) (holding claims that translated between different computer formats for electronic delivery of messages were directed to the abstract idea of translation); *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. 14-732-RGA, 2015 WL 1744343, at *4 (D. Del. Apr. 15, 2015) (holding claims that translated messages between SMS text message format and Internet Protocol format were directed to the abstract idea of translation).

The limitation reciting "image tagging or flagging based upon the occurrence of a trigger event"[15] is likewise ineligible, amounting to no more than the abstract idea of "classifying and storing digital images in an organized manner."  *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612-13 (Fed. Cir. 2016); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281,

---

14      '370 patent, claim 1.

15      '019 patent, claims 1, 2, 7.

1286-91 (Fed. Cir. 2018) (invalidating claims directed to indexing and classifying items in a database). The specification states that a "trigger event" can "mark the start of a subset of the input captured by the ICDs and/or stored by the DIR for facilitating analysis and review at a later time." ('019 patent, 15:53-62.) This activity can easily be performed offline—for example, by a certain event prompting a security guard to record the timing and details of that event in a log book. *See also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (finding claims that "generate[d] tasks [based on] rules . . . to be completed upon the occurrence of an event" were abstract ideas). The limitation regarding "changing the priority settings"[16] is also directed to the undeniably abstract ideas of organizing, classifying, and storing information. *See In re TLI*, 823 F.3d at 612-13; *see also Tagi Ventures, LLC v. Nascar Digital Media, LLC*, 2017 WL 3469527, at *5-6 (N.D. Ga. Feb. 17, 2017) (invalidating claims directed to "assigning priority values" to media signals).

Crucially, the Asserted Patents do not describe any technological improvement to computers or security systems. Instead, the claims are replete with broad, results-oriented language for carrying out the abstract ideas (emphases added to all):

- "***thereby providing*** a secure surveillance system for a target

---

[16]     '772 patent, claim 2; '877 patent, claim 2; '923 patent, claim 2.

environment"[17]

- "***thereby providing*** a method for secure communication in the surveillance system"[18]
- "***constructed and configured for*** wireless digital direct communication"[19]
- "***operable for*** transmitting instructions to and receiving and recording data inputs"[20]
- "***operable for*** direct wireless communication"[21]
- "***operable for*** capturing data input from activities within a target environment"[22]
- "***operable to*** collect and analyze the data"[23]
- "***operable for*** direct cross-communication"[24]
- "***operable to*** encode inputs in two formats simultaneously"[25]

This exemplary, non-exhaustive list of conclusory functional language reinforces the abstract nature of the claims. *See, e.g., Two-Way Media, Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017); *see also In-Depth Test*, 2018 WL 6617142, at *6 (finding that the patent is not directed to improvements in computer functionality when it "simply claims a conventional computer that . . . is 'configured'" to perform certain functions).

---

[17]      '129 patent, claim 1; '370 patent, claim 1.
[18]      '019 patent, claim 2.
[19]      '129 patent, claims 1, 6; *see also id.* at claim 14; *see also* '370 patent, claim 7; *see also id.* at '019 patent, claims 2, 7.
[20]      '129 patent, claims 1, 6; '019 patent, claim 2.
[21]      '129 patent, claims 9, 14.
[22]      '534 patent, claim 1.
[23]      '534 patent, claim 4.
[24]      '370 patent, claim 1; '772 patent, claim 16; '877 patent, claim 16.
[25]      '370 patent, claim 7.

Accordingly, the Asserted Patents are directed to ineligible abstract ideas under *Alice* step 1.

## B. *Alice* Step Two: The Claims of the Asserted Patents Recite No Inventive Concept

The Asserted Patents also fail *Alice* step 2 because the claims—whether considered alone or in combination—merely invoke "well-understood, routine [and] conventional" technology to carry out the abstract ideas. *See Alice*, 573 U.S. at 225 (citation omitted). Recently, the Federal Circuit in *BSG Tech.* clarified that when searching for the "inventive concept" at step 2 of *Alice*, the focus must turn to "whether the claim limitations ***other than the invention's use of the ineligible concept*** to which it was directed were well-understood, routine, and conventional." 889 F.3d at 1290 (emphasis added). When properly excluding the underlying abstract ideas of wireless communication and remote surveillance from the claim language, all that remains are generic computer technologies that cannot confer patent eligibility.

As noted, the claimed "ICD," "RSC," "DIR," and "DVM" are all off-the-shelf, pre-existing computer components that Sensormatic does not claim to have invented. ('129 patent, 9:7-14, 13:50-55, 5:15-17, 10:42-43; '534 patent, 3:17-20, 3:43-45; *see also id.* at 5:15-18 (explaining that the data tracked by the system "is then displayed in user friendly reports or can be exported into a common data format for use by other analytical tools including but not limited to 'standard'

18

commercial grade software, such as Microsoft Excel"). Importantly, the specifications confirm that the alleged invention simply invokes existing "wired" video surveillance systems to implement the abstract idea of making these systems "wireless." (*See, e.g.,* '129 patent, 1:31-33.)

Additionally, the claimed "single click-select"[26] functionality is one of the most notoriously well-known operations of a graphical user interface ("GUI"). Anyone who has used a computer is familiar with the basic ability to "select" an item on the GUI by clicking the mouse or other user input device. The specifications do not describe any specialized hardware or software required to implement the "single click-select" feature. ('534 patent, 5:9-10 ("With point and click ease the system can be setup to track people entering and leaving through a door."); '129 patent, 10:60-67 ("[T]he preferred embodiments of the present invention provide for one click activation for receiving and recording inputs to the at least one wireless ICD. . .").) The fact that the claims require only a "single" click, as opposed to multiple clicks, does not change the conventional nature of this feature. *See, e.g., Trading Techs., Int'l v. IBG LLC*, 921 F.3d 1084, 1090-91, 1094-95 (Fed. Cir. 2019) (invalidating claims reciting "selecting" an item "through a single action of the user input device").

The remaining claimed elements are likewise routine and conventional

---

[26]   '772 patent, claims 1-9, 14-17; '877 patent, claim 1-10, 12-13, 16-17; '923 patent, claims 1, 2, 7, 9, 10, 11, 16.

technologies that cannot transform the underlying abstract ideas.  The fact that a "remote viewing device"[27] is "operable by an authorized user"[28] does not provide anything inventive.  ('129 patent, 15:16-24 ("[T]he remote ICD reviewing [sic] device preferably being an Internet connectable personal computer or personal digital assistant, a cell phone with Internet connection capabilities.  The user provides a login from the remote viewing device to the RSC, the login including authorization and authentication steps, such as providing a username and password, for ensuring that only authorized user(s) accesses the secure system.").)  *See also Williamson v. Citrix Online, LLC*, 212 F. Supp. 3d 887, 906 (C.D. Cal. 2016) (describing the use of a username to authenticate a user as "conventional"), *aff'd*, 683 F. App'x 956 (Fed. Cir. 2017).  The "automatic locking"[29] and "external removable storage device"[30] limitations similarly employ well-known technologies, as confirmed by the specifications.  ('129 patent, 15:1-8 (describing "[c]amera locking/[s]ecurity establishment" as including "cryptographic methods such as digital signing, stream cipher encryption, block cipher encryption, and public key encryption or hardware based encryption" such as "WAP. 802.11i, AES, SSL, stream cipher, Trojan, DES, any other type of security protocol, and

---

[27]   '129 patent, claims 1, 6, 8, 14, 20, 21, 22; '370 patent, claims 1, 13; '772 patent, claim 2; '923 patent, claims 20, 23, 25.

[28]   '129 patent, claim 14.

[29]   '772 patent, claim 6; '877 patent, claim 7; '923 patent, claim 9.

[30]   '019 patent, claims 1, 2, 3, 7, 8, 9.

combinations thereof"); '019 patent, 15:46-52 ("[P]referably, the external removable data storage device is portable, such as a USB key or other portable removable data storage medium to permit a variety of data management functions . . . .").)

Finally, nothing about the "ordered combination" of claim elements "transform[s]" the nature of the claims into a patent-eligible invention. *Alice*, 573 U.S. at 217. The sequence in the claims merely recites the sequence one would expect to follow to implement the abstract ideas of wireless communication and remote surveillance in the "real world" without a computer. For example, method claim 1 of the '129 patent starts with "providing the base system" with the "input" devices (i.e., the ICD and DIR), an unremarkable first step if one intends to monitor inputs captured by a surveillance system. The next step requires "an authorized user" to "log[] into the system," followed by the user "accessing and controlling" the input devices. It is logical that, to access a surveillance system, a user would first be required to log into said system. In a practical sequence of events, it would follow that "inputs from the target environment are captured" by the input device to ultimately "provid[e] a secure surveillance system for a target environment." Nothing in the order or arrangement of limitations in the claims, therefore, recites any inventive concept.

In sum, the Asserted Patents fail *Alice* step 2 because the claimed elements,

whether considered individually or as an ordered combination, constitute routine and conventional activities.

## VII.   CONCLUSION

Because all claims of the Asserted Patents are directed to patent-ineligible subject matter, WYZE respectfully requests that the Court grant its motion for judgment on the pleadings and dismiss Plaintiff's Complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com

*Attorneys for Defendant Wyze Labs, Inc.*

OF COUNSEL:
Reuben H. Chen (#228725)
Lam Nguyen (#265285)
Dena Chen (#286452)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304

Erik Milch (#46375)
COOLEY LLP
Reston Town Center
11951 Freedom Drive, 14th Floor
Reston, VA 20190

December 23, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 23, 2019, upon the following in the manner indicated:

Steven J. Balick                                    *VIA ELECTRONIC MAIL*
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899

*Attorneys for Plaintiff*
*Sensormatic Electronics, LLC*

Jeffrey N. Costakos                                *VIA ELECTRONIC MAIL*
Kadie M. Jelenchick
Kevin J. Malaney
Sarah E. Rieger
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202-5306

*Attorneys for Plaintiff*
*Sensormatic Electronics, LLC*

*/s/ Karen Jacobs*
Karen Jacobs (#2881)