IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SENSORMATIC ELECTRONICS, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 19-1543-CFC-SRF |
| v. | ) | |
| | ) | |
| WYZE LABS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**SENSORMATIC'S ANSWERING BRIEF IN OPPOSITION
TO WYZE'S MOTION FOR JUDGMENT ON THE PLEADINGS**

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff
Sensormatic Electronics, LLC*

*Of Counsel*:

Jeffrey N. Costakos
Kadie M. Jelenchick
Kevin J. Malaney
Sarah E. Rieger
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
(414) 271-2400

Dated:  January 7, 2020

{01523761;v1 }

# TABLE OF CONTENTS

I.    **INTRODUCTION** ..................................................................1

II.   **NATURE AND STAGE OF THE PROCEEDINGS**....................1

III.  **SUMMARY OF ARGUMENT**......................................................2

IV.  **STATEMENT OF FACTS** ...........................................................3

V.    **LEGAL STANDARD** ..................................................................4

VI.  **THE COURT SHOULD DENY WYZE'S MOTION** ...............6

    A.    No Individual Claim Is Representative of All Asserted Patents ..........6

    B.    The Asserted Patents Are Not Directed to Abstract Ideas ...................9

    C.    The Claims Involve More than the Performance of "Well-Understood, Routine, Conventional" Activities..................................14

        1.    The input capture device (ICD) is not "well-understood, routine, [or] conventional".......................................................15

        2.    Single click activation is not "well-understood, routine, [or] conventional" ....................................................................17

        3.    Dual encoding is not "well-understood, routine, [or] conventional" ....................................................................18

        4.    Wyze fails to address numerous other claim elements.............18

    D.    The Court Should Not Decide Patent Eligibility on the Pleadings in this Case..........................................................................19

        1.    Wyze's arguments rely on impermissible outside "facts" ........20

        2.    At a minimum, claim construction is required before any decision on patentability can be reached ...............................21

VII.  **CONCLUSION** ..........................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ....................................................5, 15, 17, 19, 20

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
  573 U.S. 208 (2014).................................................... 1, 2, 4, 5, 9, 14, 15, 18, 19

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
  209 F. Supp. 3d 744 (D. Del. 2016).....................................................................4

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) .................................................................15, 16

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ...........................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l
  Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ...........................................................................6

*Deston Therapeutics LLC v. Trigen Labs., Inc.*,
  723 F. Supp. 2d 665 (D. Del. 2010)...................................................................21

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ......................................................5, 9, 10, 11

*In-Depth Test, LLC v. Maxim Integrated, Prod., Inc.*,
  No. CV 14-887-CFC, 2018 WL 6617142 (D. Del. Dec. 18, 2018) ....................6

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
  752 Fed. Appx. 1024 (Fed. Cir. 2018)..................................................................8

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*,
  No. CV 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015)...................14

*Mod Stack, LLC v. Aculab, Inc.*,
  Civ. No. 18-332-CFC, 2019 U.S. Dist. LEXIS 129145 (D. Del.
  Aug. 2, 2019) .....................................................................................................10

*Motionless Keyboard Co. v. Microsoft Corp.*,
　486 F.3d 1376 (Fed. Cir. 2017) ............................................................8

*MyMail, Ltd. v. ooVoo, LLC*,
　934 F.3d 1373 (Fed. Cir. 2019) ......................................................6, 21

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*,
　No. CV 14-612-RGA, 2015 WL 5156526 (D. Del. Sept. 2, 2015)...................14

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*,
　946 F.2d 870 (Fed. Cir. 1991) ............................................................7

*Thales Visionix, Inc. v. United States*,
　850 F.3d 1343 (Fed. Cir. 2017) ......................................................4, 12

*In re TLI Comms. LLC Patent Litigation*,
　823 F.3d 607 (Fed. Cir. 2016) ............................................................5

*Venetec Inter., Inc. v. Nexus Med., LLC*,
　541 F. Supp. 2d 612 (D. Del. 2008)..........................................4, 15, 20

**Statutes**

§ 35 U.S.C. 101 ..............................................................1, 2, 4, 9, 10, 17

**Other Authorities**

Fed. R. Civ. P. 12(c)..........................................................1, 4, 21

## I.    <u>INTRODUCTION</u>

Wyze Labs, Inc.'s Motion for Judgment on the Pleadings (D.I. 21) should be denied with prejudice. Wyze has failed to show that any of the Asserted Patents' claims are directed to any abstract idea or that they lack any inventive concept. Wyze has not and cannot meet its burden to show – by clear and convincing evidence – that the Asserted patents are invalid under §101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 573 U.S. 208 (2014).

## II.    <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

On August 19, 2019, Plaintiff Sensormatic Electronics, LLC filed a Complaint against Wyze asserting that Wyze's manufacture and sale of certain video surveillance systems infringe seven patents directed to novel video surveillance improvements.  (D.I. 1.) After being granted two extensions of time, Wyze filed its Answer on November 8, 2019, denying infringement and asserting pro forma affirmative defenses, including a §101 defense. (D.I. 9.) Discovery has just begun, with each party having served its first sets of discovery requests. Now, Wyze moves for judgment on the pleadings under Fed. R. Civ. P. 12(c), arguing that the Asserted Patents claim patent-ineligible subject matter.[1]

---

[1] Sensormatic respectfully assumes that Wyze's Motion will count against the dispositive motion word-count limits imposed by paragraph 19(c) of the Scheduling Order (D.I. 16).

## III.    SUMMARY OF ARGUMENT

1.  Sensormatic asserts seven patents directed to novel video surveillance improvements. The 123 claims of these patents are drawn to different aspects of the disclosed systems. This is readily apparent from the differences across the claim sets of the seven patents. As explained further herein, all of the claims are drawn to patentable subject matter under §101 and *Alice*.

2.  Despite this, Wyze summarily argues that all 123 claims of the asserted patents are invalid under §101 and *Alice*. In doing so, Wyze improperly focuses on one patent claim as representative of the validity of all claims. As shown herein, this claim is not representative given the differences across the claim sets, and Wyze's Motion should be denied on this basis alone.

3.  Wyze also misleadingly portrays all 123 claims as merely addressing the abstract ideas of general wireless communication and remote surveillance. As with its other arguments, Wyze's Motion makes little effort to analyze the numerous differences across the 123 claims. Wyze's oversimplified approach is directly contrary to binding precedent of the Supreme Court, Federal Circuit, and this very Court.  Thus, Wyze falls well short of its burden to prove by clear and convincing evidence that all 123 claims are invalid.

## IV.    **STATEMENT OF FACTS**

Sensormatic has brought claims for infringement of U.S. Patent Nos. 7,954,129; 7,730,534; 7,936,370; 8,208,019; 8,610,772; 9,407,877; and 10,198,923 (collectively, "the Asserted Patents"). (D.I. 1.) Although they have similar specifications, each of these patents is directed to different aspects of a novel system and method of wireless surveillance. (*See* Abstract of each of the Asserted Patents). The claim scope differences across the seven patents are readily apparent upon review of the plain language of just the asserted independent claims. (*Compare* Ex. A Claim 14, Ex. B Claim 1, Ex. C Claim 7, Ex. D Claim 7, Ex. E Claim 1, Ex. F Claim 16, and Ex. G Claim 1.) These systems and methods not only offer wireless alternatives to prior art wired surveillance systems and methods, but also improve upon the underlying technology by, *inter alia*, providing system capture devices that can communicate with each other (*e.g.*, Ex. G 7:9-30), simplifying set-up and control of surveillance systems (*e.g.*, Ex. A 1:40-49), allowing for comparison of data inputs from multiple remotely-located input devices (*e.g.*, Ex. B 1:66-2:4), and securing the storage and transmission of data from the system's input devices (*e.g.*, Ex. F 14:39-15:8). Contrary to Wyze's

suggestion, no single independent claim is representative of the 123 claims in the Asserted Patents.[2]

## V.    **LEGAL STANDARD**

When deciding a Rule 12(c) motion for judgment on the pleadings, the district court "must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party." *Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 754 (D. Del. 2016). These facts and inferences must be drawn from the pleadings themselves or the exhibits attached thereto. *Venetec Inter., Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008). "The motion can be granted only if no relief could be afforded under any set of facts that could be provided." *Astrazeneca*, 209 F. Supp. 3d at 754. Furthermore, the movant must "clearly establish[] that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law." *Id.*

Patent eligibility under §101 is assessed under the two-step test articulated in *Alice*, 573 U.S. at 217. Under the first step of *Alice*, the court must determine

---

[2] If an independent claim is directed to patent-eligible subject matter, any dependent claims are necessarily directed to patent-eligible subject matter. *Thales Visionix, Inc. v. United States*, 850 F.3d 1343, 1345 n.1 (Fed. Cir. 2017). Therefore, for the sake of brevity, this Response refers only to the independent claims of each Asserted Patent. Sensormatic does not waive and reserves any argument that the additional elements of the dependent claims render those claims patent-eligible under either step of *Alice*.

whether the challenged claims are directed to patent-ineligible subject matter, such as an abstract concept or a law of nature. *Id.* The Federal Circuit has warned in regard to *Alice* step one that "we must be careful to avoid oversimplifying the claims." *In re TLI Comms. LLC Patent Litigation*, 823 F.3d 607, 611 (Fed. Cir. 2016). If each claim is so broad as to be directed towards a patent-ineligible abstract idea, the court moves to step two, in which the court considers whether any elements of the challenged claim, either individually or in combination, "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012)). The court proceeds to the second step only if it finds that the challenged claims are directed to patent-ineligible subject matter under step one. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).

Although the ultimate issue of patent eligibility is a question of law, "there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). For instance, in step two, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact . . . [that] must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). As a result, patent eligibility may be

determined on a motion for judgment on the pleadings "only when there are no factual allegations that, if taken as true, prevent resolving the eligibility question as a matter of law." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

## VI.    THE COURT SHOULD DENY WYZE'S MOTION

### A.    No Individual Claim Is Representative of All Asserted Patents

The Court should reject Wyze's assertion that claim 14 of the '129 patent is representative of all claims of the Asserted Patents. The cases Wyze cites for its "representative claim" theory all involved situations in which the patent owner did not contest that the cited claims were representative, which is **not** the case here. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014) ("In its opposition to PNC's motion, CET did not challenge PNC's characterization of claim 1 of the '855 patent or claim 1 of the '416 patent as representative…."); *In-Depth Test, LLC v. Maxim Integrated, Prod., Inc.*, No. CV 14-887-CFC, 2018 WL 6617142, at *2 (D. Del. Dec. 18, 2018) ("In light of … the fact that Plaintiff quotes only from claim 1 in its brief filed in opposition to Defendants' motions, I will treat claim 1 as representative of all claims.").

Claim 14 of the '129 patent is not representative of all claims of the Asserted Patents. In fact, the claims of the '129 patent are the broadest asserted claims,

omitting many of the claim elements found in the other Asserted Patents. (*See, e.g.,* Ex. B Claim 1 (requiring direct cross-communication between devices and automatic remote activation); Ex. C Claims 1 and 7 (requiring dual encoding capabilities); Ex. D Claims 1, 2, and 7 (requiring direct communication between devices and automatic detection of trigger events); Ex. E Claims 1 and 16 (requiring direct cross-communication between devices and single-click activation); Ex. F Claims 1 and 16 (requiring automatic and remote adjustment capability and single-click activation); Ex. G (same).) As discussed below, each of the Asserted Patents is directed to a different inventive aspect of the claimed systems or methods, and the validity of their claims must be considered separately. Wyze's attempts to invalidate all claims of all of the Asserted Patents based solely on a cursory discussion of claim 14 of the '129 patent should be rejected. On this basis alone, Wyze's Motion must be denied.

Wyze's reliance on terminal disclaimers does not change the result. Wyze highlights the unremarkable fact that the Asserted Patents contain terminal disclaimers and implies that this is an admission that all claims of the Asserted Patents have the same scope. (D.I. 22 3-4.) Wyze is wrong. Properly understood, terminal disclaimers are simply a patent prosecution tool to streamline prosecution and remove examiner rejections. They create no admission or presumption whatsoever regarding the rejection at issue. *See, e.g., Quad Envtl. Techs. Corp. v.*

*Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991) ("[T]he filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection."); *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1385 (Fed. Cir. 2017) ("A terminal disclaimer is simply not an admission that a later-filed invention is obvious.").

The single non-precedential case upon which Wyze relies, *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 752 Fed. Appx. 1024 (Fed. Cir. 2018), is distinguishable. *Indivior* analyzed whether two lawsuits represented the same cause of action for determining the application of claim preclusion. The analysis involved expressly comparing claim sets of the patents asserted in the two lawsuits – not patent eligibility. One factor the court used to support its analysis was the presence of a terminal disclaimer regarding the claim set of a subsequent patent over the first patent's claims. *Id.* at 1035. Thus, the terminal disclaimer provided specific evidence in determining whether two claim sets represented the same cause of action. Unlike *Indivior*, Wyze's Motion makes no attempt to address the claim sets at issue and makes no attempt to analyze the terminal disclaimers filed in seven patent prosecutions against the then pending and now issued claims. Instead, Wyze's argument is conclusory and avoids specific discussion of the claims at issue.

{01523761;v1 }

### B.    The Asserted Patents Are Not Directed to Abstract Ideas

No claim of the Asserted Patents, which relate to computer-based inventions, is directed to an abstract idea. When considering a computer-based invention under the first step of *Alice*, the court must consider whether the challenged claims focus "on the specific asserted improvement in computer capabilities. . .or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. As a matter of law, the mere fact that a claimed invention may partly rely on general-purpose computing technology does not render the claims patent-ineligible where the invention effects an improvement in functionality. *Id.* at 1338. Against this backdrop, the court must take care not to view or describe the claimed invention in oversimplified terms or at too high a level of abstraction. *Id.* at 1337-38; *see also Alice*, 573 U.S. at 217 ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law."). To do otherwise constitutes reversible error. *See Enfish*, 822 F.3d at 1337-38 ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

Here, Wyze improperly frames the *Alice* analysis. Wyze first presents an oversimplified, high-level view of the Asserted Patents in the most general manner possible, typically without reference to the actual claim language, in order to

portray the asserted claims as encompassing only the broad, abstract ideas of wireless communication and remote surveillance. (D.I. 22 5.) Wyze then focuses not on the claims as a whole but on isolated elements removed from their context. (*See, e.g., id.* at 7-8.) This is incorrect and ignores controlling law. The claims as a whole are what matter, not the general field of invention or individual, isolated elements. *See Enfish*, 822 F.3d at 1335-36.

In a recent case, this Court rejected a similar motion in which the movant oversimplified the claims at issue by articulating an abstract idea that did not reflect the actual claim language:

> Here, [Accused Infringer], with its proposed abstract idea of "using a common language to translate between two foreign languages," has done exactly what the Supreme Court and the Federal Circuit have cautioned against – it has oversimplified the claims and described claim 1 (and the '520 patent as a whole) in such a way that its proposed abstract idea is "untethered from the language of the claim."

*Mod Stack, LLC v. Aculab, Inc.*, Civ. No. 18-332-CFC, 2019 U.S. Dist. LEXIS 129145 at *8 (D. Del. Aug. 2, 2019) (denying 12(b)(6) motion to dismiss premised on §101 grounds). The same result is compelled here. As described in further detail below, the claims of the Asserted Patents are not directed to *any* form of wireless communication or *any* form of remote surveillance. Rather, they are directed to specific systems and methods that carve out aspects of those concepts in novel, non-abstract ways. For example, the claimed inventions are directed not just to

wireless communication and surveillance generally, but more specifically, to providing system capture devices that can communicate with each other (*e.g.*, Ex. G 7:9-30), simplifying set-up and control of surveillance systems (*e.g.*, Ex. A 1:40-49), allowing for comparison of data inputs from multiple, remotely-located input devices (*e.g.*, Ex. B 1:66-2:4), and securing the storage and transmission of data from the system's input devices (*e.g.*, Ex. F 14:39-15:8). Such limited subject matter is non-abstract and patent-eligible. *See Enfish*, 822 F.3d at 1337 (claims patent-eligible where they "are not simply directed to *any* form of storing tabular data, but instead are specifically directed to a *self-referential* table").

Furthermore, Wyze's analysis of the relevant claim limitations is wrong. These above-stated goals are accomplished in a variety of ways, which are reflected in claim elements that are far narrower than the abstract ideas of wireless communication or surveillance generally. Wyze's arguments to the contrary misrepresent the proper construction and scope of those terms.

For example, Wyze's analysis of certain claims' direct wireless communication element is lacking. Its conclusory argument that "[w]ireless communication is an abstract idea whether it is direct (*i.e.*, from device-to-device) or indirect (*i.e.*, through a server)" (D.I. 22 12), has no basis in the pleadings, patents, or case law. The independent claims of the '534 patent, the '019 patent, the '129 patent, and the '772 patent all require that an input capture device (ICD)

be capable of *direct* communication or *direct* cross-communication with either another ICD or a digital input recorder (DIR). That is, all of these claims require the ICD to communicate with another ICD or a DIR without routing communications through a server. (*See, e.g.,* Ex. D 10:24-31 (direct communication occurs in embodiments without a server).) This system of direct wireless communication between device components facilitates a more flexible control and communications environment because a central server need not be in direct communication with all devices in the system. (*See, e.g.*, Ex. B 8:38-53; 9:65-10:5; 12:18-33; 13:39-53.) In this way, the devices in the system can directly communicate input and control information with each other. (*Id.*) Such a shift constitutes a non-abstract, patent-eligible advancement over the prior art. *See, e.g., Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1344-45 (Fed. Cir. 2017)) (holding that claims that changed from conventional, indirect measurements of inertia to direct measurement were not directed to abstract idea). Accordingly, Wyze's Motion should be denied with prejudice as to those claims requiring direct wireless communication or cross-communication.

Wyze's Motion is also misleading in its treatment of the '019 patent claims' trigger event limitations. Namely, Wyze's analysis is limited to the categorization of data generated in response to a trigger event. (D.I. 22 14-15.) It ignores that the claims also require the system or method to "automatically detect[] a trigger event

{01523761;v1 }

at any of the ICD(s)" included in the system or used in the method. (Ex. D Claims 1 and 2; *see also* Claim 7.) Distributed event recognition is distinct from the abstract idea of data categorization, which is the sole abstract idea Wyze references in connection with these limitations. It is also not something that a human being could do without the assistance of technology where, as in certain claims of the '019 patent, the automatically detected trigger event may occur in any one of several locations. (*See, e.g., id.* at Claim 1 (requiring that "the ICDs are installed at spaced apart fixed locations").) By focusing solely on the categorization of data, which is a small portion of what the '019 patent claims, Wyze ignores other aspects of the claims that take them beyond any mere abstract idea. Wyze's Motion should be denied with respect to these claims.

As further examples, independent Claims 1 and 7 of the '370 patent are directed to a practical, non-abstract system and method of video surveillance that makes use of multiple encoding of inputs. At the outset, Wyze's arguments regarding these claims pretend that these claims solely claim the "dual encoding" concept. However, Claims 1 and 7 of the '370 patent include many other elements beyond the encoding aspects. (*See, e.g.*, Ex. C Claims 1 and 7 (including, among others, limitations drawn to the "direct cross-communication of inputs" between devices in the system).) Despite Wyze's arguments to the contrary (*see* D.I. 22 14-15), dual encoding is not a simple translation from one format (*e.g.*, video) to

another (*e.g.*, still images). It is different process in which a single input is encoded in multiple distinct formats for use in the system. (Ex. C 15:40-55.) The cases Wyze cites, however, deal only with situations in which an input is first encoded in one format and then subsequently converted to a second format. *See Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, No. CV 14-612-RGA, 2015 WL 5156526, at *2–3 (D. Del. Sept. 2, 2015); *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. CV 14-732-RGA, 2015 WL 1744343, at *4 (D. Del. Apr. 15, 2015). That is not what happens here, and Wyze offers no evidence or case law to suggest that dual encoding, as properly understood, constitutes or is directed to an abstract idea. As such, Wyze's Motion should be denied as to these claims.

Wyze has failed to show that any of the asserted claims are directed to a patent-ineligible abstract idea under *Alice* step one. In fact, they are directed to discrete, patent-eligible applications that are related to, but not coextensive with, those ideas. Accordingly, Wyze's Motion should be denied with prejudice.

## C. The Claims Involve More than the Performance of "Well-Understood, Routine, Conventional" Activities

Even if the Court determines that the asserted patents are generally directed to an abstract idea, the Court should deny Wyze's Motion under the second step of *Alice*. Under this second step, the court considers whether any elements of the challenged claim, either individually or in combination, "'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*,

566 U.S. at 78-79). A claim is less likely to be patent-ineligible when its elements "do not preempt the use of the abstract idea . . . on the Internet or on generic computer components performing conventional activities." *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). Additionally, a claim is not patent-ineligible under the second step of *Alice* "when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix*, 882 F.3d at 1128 (quoting *Content Extraction*, 776 F.3d at 1347-48) (internal quotation marks omitted).

Here, Wyze offers nothing more than conclusory statements that every element of the asserted claims, both in isolation and in combination, are "well-understood, routine [and] conventional." (D.I. 22 18.) This argument has no factual support. Indeed, it is belied by the language of the patents themselves, which along with the pleadings, is all this Court may consider at this stage. *Venetec*, 541 F.Supp.2d at 617. A few examples of the relevant patent language are provided below.

### 1. The input capture device (ICD) is not "well-understood, routine, [or] conventional"

Wyze's argument that the ICD "merely 'sens[es], captur[es], and transmit[s] surveillance inputs'" is an oversimplification of the actual patent language. (*See* D.I. 22 at 6.) In reality, each of the specifications goes into much detail regarding

the required and preferred components of an ICD according to the claimed invention. (*See* Ex. A 7:7-10:34; Ex. B 8:24-11:50; Ex. C 6:65-10:24; Ex. D 6:64-10:31; Ex. E 7:21-10:47; Ex. F 6:50-10:11; Ex. G 7:1-10:34.) The claims make clear that the ICD is not just any generic component—it must contain a number of specific features and be capable of performing a number of functions in order to fall within the scope of the patents' claims. It must also be capable of cross-communication with other ICDs in order to exchange input and control information regarding the surveillance environment, settings, and inputs and must be configurable for two-way wireless communication with other devices, none of which Wyze has established as "rudimentary computer functions." (*See* D.I. 22 at 6.)

Furthermore, despite Wyze's contrary assertion, none of the specifications "confirm[ed] that ICDs are pre-existing, commercially-available technologies." (*Id.*) Rather, the portion of the specification Wyze cites deals with discrete *components* of an ICD, namely sensors that may be incorporated into an ICD. (*See, e.g.,* Ex. A 9:6-14.) It is well-established that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1350. The inclusion of a commercially-available sensor in an ICD does not render the ICD itself conventional as the disclosed ICDs of the Asserted Patents go well beyond merely containing an image sensor.

{01523761;v1 }

16

Accordingly, Wyze has failed to establish that the ICD constitutes a "well-understood, routine [and] conventional" element as required under Alice step two. Wyze's Motion should be denied with respect to all of the Asserted Patents because each challenged claim includes an ICD.

### 2. Single click activation is not "well-understood, routine, [or] conventional"

Wyze's arguments are similarly lacking with respect to the single click-select command activation element found in the claims of the '772 patent, the '877 patent, and the '923 patent. The patents themselves note that the capability for single click activation was a "surprising[]" advancement over the prior art. (Ex. E 10:57-11:13; Ex. F 10:21-44; Ex. G 10:44-67.) This language suggests that "the claimed invention is directed to an improvement in the computer technology itself and not directed to generic components performing conventional activities." *Aatrix*, 882 F.3d at 1127. As a result, the specifications "at a minimum raise factual disputes underlying the §101 analysis, such as whether the claim term ['single click-select command activation'] constitutes an inventive concept, alone or in combination with other elements, sufficient to survive an *Alice*/*Mayo* analysis" at the pleading stage. *Id.* at 1126. Wyze cannot show otherwise at this stage, and its Motion should be denied with respect to these claims.

### 3.    Dual encoding is not "well-understood, routine, [or] conventional"

As detailed in Section VI.B, above, the dual encoding element found in the claims of the '370 patent is a complicated process that differs significantly from the simple translations to which Wyze attempts to compare it. In fact, dual encoding involves the encoding of an input into multiple formats for consumption by the system. (Ex. C 15:40-55.) There is no indication anywhere in the pleadings or the patents that such an element was "well-understood, routine [and] conventional" as required under *Alice* step two. Accordingly, Wyze's Motion should be denied with respect to these claims.

### 4.    Wyze fails to address numerous other claim elements

Wyze's Motion also fails because it fails to account for a large number of claim elements (either in isolation or in combination) that may provide an inventive concept. For example, Wyze completely ignores the fact that automatic detection of trigger events is a critical element found in each claim of the '019 patent. (*See* Section VI.B.) Such a process could easily prove inventive, either on its own or when coupled with the other inventive elements discussed herein. There is no suggestion in the pleadings, the patents, or Wyze's Motion that these elements were "well-understood, routine, [or] conventional" at the time of invention. The same is true of at least the following elements: automatic remote activation (*e.g.,* Ex. B Claim 1); dual encoding (*e.g.,* Ex. C Claims 1 and 7), and

direct cross-communication (*e.g.,* Ex. B Claim 1; Ex. A Claims 1, 6, 8, and 14; Ex. D Claims 1 and 2; Ex. E Claims 1 and 16). Wyze addresses none of these elements in connection with *Alice* step two.

Wyze also ignores the possibility that the combination of elements in any asserted claim other than Claim 1 of the '129 patent could provide an inventive concept. (*See* D.I. 22 at 21.) Just as with Claim 14 of the'129 patent, Claim 1 lacks a number of discrete claim elements found in the claims of the other Asserted Patents. (*See* '129 patent Claim 1.) There is therefore no support for Wyze's assertion that the ordered combination of claim elements cannot provide an inventive concept for any of the asserted claims and Wyze cannot prove invalidity by clear and convincing evidence.

### D.    The Court Should Not Decide Patent Eligibility on the Pleadings in this Case

Finally, even if the Court has its doubts about whether the Asserted Patents are directed to abstract ideas, it should still deny Wyze's Motion (without prejudice) in view of the highly factual issues that must be resolved before any decision regarding subject matter eligibility can be reached. The Federal Circuit has explicitly held that "[w]hether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Aatrix*, 882 F.3d at 1128. Where that question "cannot be answered adversely to the patentee based on the sources properly considered" on a motion for judgment on the pleadings

(*i.e.*, the complaint, the patent itself, and material subject to judicial notice), such a motion should be denied. *Id.* at 1128-30. Factual issues thus preclude judgment on the pleadings.

### 1.    Wyze's arguments rely on impermissible outside "facts"

As demonstrated throughout this Response, Wyze's arguments regarding the patentability rest not on any demonstrable facts from the pleadings and patents themselves but on conclusory arguments based wholly on supposition and a selective reading of the patents. Wyze consistently attempts to introduce alleged, unproven, facts from outside the pleadings and the patents in support of its arguments that certain claim elements are "basic" or "conventional" and thus inherently unpatentable. (*E.g.*, D.I. 22 at 12, 19). Such assertions, even if presumed to be true, cannot properly be considered here. *Venetec*, 541 F.Supp.2d at 617 (facts and inferences to support judgment on the pleadings must be drawn from pleadings themselves or exhibits thereto).

Where Wyze does cite to the patents, it does so in a limited and misleading way. For example, while Wyze claims that "the specifications confirm that the alleged invention simply invokes existing 'wired' video surveillance systems to implement the abstract idea of making these systems 'wireless'" (D.I. 22 19 (citing Ex. A 1:31-33)), it ignores the fact that the claimed inventions are *also* directed toward solving discrete problems with prior art security systems. These include,

but are not limited to, providing system capture devices that can communicate with each other (*e.g.*, Ex. G 7:9-30), simplifying set-up and control of surveillance systems (*e.g.*, Ex. A 1:40-49), allowing for comparison of data inputs from multiple, remotely-located input devices (*e.g.*, Ex. B 1:66-2:4), and securing the storage and transmission of data from the system's input devices (*e.g.*, Ex. F 14:39-15:8).

### 2. At a minimum, claim construction is required before any decision on patentability can be reached

To the extent that Wyze may argue that some or all of the specific characteristics described in Sections VI.B-VI.C, above, are not required by the claims, as a matter of claim construction, such an argument would render this Motion premature. Both the Federal Circuit and the District of Delaware have repeatedly held that motions such as this cannot be granted where there are outstanding issues of claim construction. *See, e.g., MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1381 (Fed. Cir. 2019) (district court erred by deciding patent eligibility on Rule 12(c) motion before resolving claim construction dispute); *Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665, 670 (D. Del. 2010) ("[T]he process for properly construing a patent claim is unsuited for a motion to dismiss."). As such, to the extent Wyze expressly or tacitly disagrees with Sensormatic's characterizations of the claim elements, its Motion must be denied.

{01523761;v1 }

## VII.  **CONCLUSION**

Sensormatic respectfully requests that the Court deny Wyze's Motion with prejudice. In the alternative, Sensormatic respectfully requests that the Court deny the Motion without prejudice until the Court can conduct the necessary claim construction and fact-finding.

                                        ASHBY & GEDDES

                                        */s/ Steven J. Balick*

                                        _____
                                        Steven J. Balick (#2114)
                                        Andrew C. Mayo (#5207)
                                        500 Delaware Avenue, 8th Floor
Of Counsel:                             P.O. Box 1150
                                        Wilmington, DE 19899
Jeffrey N. Costakos                     (302) 654-1888
Kadie M. Jelenchick                     sbalick@ashbygeddes.com
Kevin J. Malaney                        amayo@ashbygeddes.com
Sarah E. Rieger
Foley & Lardner LLP                     *Attorneys for Plaintiff*
777 East Wisconsin Avenue               *Sensormatic Electronics, LLC*
Milwaukee, WI 53202-5306
(414) 271-2400

Dated:  January 7, 2020

## <u>CERTIFICATION</u>

The undersigned hereby certifies that the foregoing **SENSORMATIC'S ANSWERING BRIEF IN OPPOSITION TO WYZE'S MOTION FOR JUDGMENT ON THE PLEADINGS** contains 4,996 words, excluding the cover page, tables, and signature blocks, and that it complies with the Court's type, font, and word limitations.

*/s/ Steven J. Balick*

_____

Steven J. Balick