IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SENSORMATIC ELECTRONICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1543 (CFC) (SRF) |
| | ) | |
| WYZE LABS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
JUDGMENT ON THE PLEADINGS FOR LACK OF
<u>PATENTABLE SUBJECT MATTER</u>**

OF COUNSEL:

Reuben H. Chen
Lam Nguyen
Dena Chen
Lauren Krickl
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Erik Milch
COOLEY LLP
Reston Town Center
11951 Freedom Drive
14th Floor
Reston, VA 20190
(703) 456-8000

January 14, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com

*Attorneys for Defendant Wyze Labs, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................1

II.    THE ASSERTED PATENTS ARE INELIGIBLE UNDER *ALICE* .............1

    A.    Sensormatic Misstates the Law Regarding Representative Claims...............................................................................1

    B.    Sensormatic's Own Characterizations of the Claims Confirm That They Are Directed to Abstract Ideas ...........................................2

    C.    Sensormatic's Claims Recite No Inventive Concept ..........................7

    D.    Resolution under § 101 is Appropriate at this Stage.........................10

III.    CONCLUSION..........................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014)............................................................................*passim*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................4

*Automated Tracking Sols., LLC v. Coca-Cola Co.,*
723 F. App'x 989 (Fed. Cir. 2018) ..................................................10

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) ......................................................10

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) ....................................................8, 9

*CardioNet, LLC v. Scottcare Corp.,*
388 F. Supp. 3d 442 (E.D. Pa. 2019)...............................................5

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019) ........................................................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014) ...............................................1, 4, 11

*Coqui Techs., LLC v. Gyft, Inc.,*
No. 17-777-CFC-SRF, 2018 WL 6033479 (D. Del. Nov. 16, 2018) .................8

*Cyberfone Sys., LLC v. Cellco P'ship,*
885 F. Supp. 2d 710 (D. Del. 2012).................................................11

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016) ....................................................4, 5

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
792 F.3d 1363 (Fed. Cir. 2015) ....................................................4, 6

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ...............................................................3

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015). (*See also* Ex. 1.) ...............................3

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) .............................................................10

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  333 F. Supp. 2d 513 (E.D. Va. 2004) .......................................................9

*Mod Stack, LLC v. Aculab, Inc.*,
  No. 18-332-CFC, 2019 U.S. Dist. LEXIS 129145 (D. Del. Aug. 2,
  2019) .........................................................................................................3

*O2 Media, LLC v. Narrative Sci. Inc.*,
  149 F. Supp. 3d 984 (N.D. Ill. 2016) .......................................................9

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) .............................................................10

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017 ................................................................10

*Specialized Monitoring Sols., LLC v. ADT LLC*,
  367 F. Supp. 3d 575 (E.D. Tex. 2019) ......................................................5

*Tenaha Licensing LLC v. Ascom (US) Inc.*,
  No. 19-568-LPS-SPF, 2020 WL 30427 (D. Del. Jan. 2, 2020).............11

*Thales Visionix Inc. v. U.S.*,
  850 F.3d 1343 (Fed. Cir. 2017) ...............................................................5

*Trading Techs., Int'l, Inc. v. IBG LLC*,
  921 F.3d 1084 (Fed. Cir. 2019) ...............................................................9

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
  916 F.3d 1363 (Fed. Cir. 2019) ...............................................................6

*Yodlee, Inc. v. Plaid Techs. Inc.*,
  No. 14-1445-LPS, 2016 WL 2982503 (D. Del. May 23, 2016).............6

## I.      INTRODUCTION

Sensormatic's Opposition (D.I. 24, "Opp'n") highlights the ineligibility of the Asserted Patents.  Each feature identified by Sensormatic as a supposed improvement to the underlying technology is either (1) an abstract idea itself, or (2) a routine and conventional activity that cannot confer patent eligibility. Critically, Sensormatic continues to characterize the Asserted Patents in terms of results-oriented language, posing serious risks of preemption in the field of wireless surveillance systems.    Sensormatic's conclusory attempts to avoid dismissal on the pleadings should likewise be rejected because Sensormatic fails to identify a single fact that plausibly removes the claims from the realm of abstract ideas.

## II.     THE ASSERTED PATENTS ARE INELIGIBLE UNDER *ALICE*

### A.     Sensormatic Misstates the Law Regarding Representative Claims

Contrary to Sensormatic's assertion (*see* Opp'n at 6-7), there is no requirement for a representative claim to be precisely commensurate with all the remaining claims.  Using a representative claim is permissible as long as "all the claims are substantially similar and linked to the same abstract idea."  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted).  Here, '129 Claim 14 is linked to the abstract ideas of wireless communication and remote surveillance— the same concepts at the heart of every other asserted claim. (*See* D.I. 22

("Opening Brief" or "OB") at 4-5.)  Further contrary to Sensormatic's assertions (*see* Opp'n at 7), Wyze carefully accounted for each limitation added by the remaining claims.  (OB at 6-8, 14-16, 19-21.)  Likewise, Sensormatic's contention that "each of the Asserted Patents is directed to a different inventive aspect of the claimed systems or methods" (Opp'n at 7) is misplaced and ignores the striking similarities in claim language and concepts across all seven Asserted Patents.  (*See, e.g.,* Ex. 1.)[1]  Sensormatic also misses the point on terminal disclaimers.  Wyze never argued that disclaimers create an "admission or presumption" regarding examiner rejections.  (Opp'n at 7.)  Rather, Wyze noted that a disclaimer provides a "strong clue" that claims in a continuation lack a patentable distinction over the parent.  (OB at 3-4.)

## B.   Sensormatic's Own Characterizations of the Claims Confirm That They Are Directed to Abstract Ideas

Sensormatic's arguments under *Alice* step 1 only reinforce that the claims are directed to abstract ideas.  First, contrary to Sensormatic's assertions, Wyze's analysis is tethered to the claim language.   The abstract ideas of "wireless communication" and "remote surveillance" (or close variations thereof) are recited

---

[1] Even if '129 Claim 14 were not representative of all Asserted Claims, the 17 independent claims that Sensormatic treats as representative are ineligible under § 101.  (*See* Opp'n at 4 n.2 ("this Response refers only to the independent claims of each Asserted Patent").)  These 17 claims and the abstract and/or routine and conventional concepts to which they are directed, as discussed in the Opening Brief, are set forth in Exhibit 1.

in every independent claim.   (*See* Ex. 1.)   Thus, the claims' "character as a whole"—considering every limitation individually and collectively—is directed to abstract subject matter.  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  (*See also* Ex. 1.)[2]  The facts here are thus readily distinguishable from *Mod Stack, LLC v. Aculab, Inc.*, where the abstract idea of "using a common language to translate between two foreign languages" was completely "untethered from the language of the claim[s]."  No. 18-332-CFC, 2019 U.S. Dist. LEXIS 129145, at *8 (D. Del. Aug. 2, 2019).

Second, Sensormatic identifies four "goals" that the claims allegedly accomplish: (i) providing system capture devices that can communicate with each other; (ii) simplifying set-up and control of surveillance systems; (iii) allowing for comparison of data inputs from multiple, remotely-located input devices; and (iv) securing the storage and transmission of data from the system's input devices. (Opp'n at 10-11; *see also id.* at 3, 21.)  But by characterizing the claims in terms of their "goals," Sensormatic employs precisely the type of results-oriented, functional language that courts repeatedly use to find claims ineligible.  *See, e.g., Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017).

---

[2] And although Sensormatic asserts that the claims have a novel combination of elements, it never asserts what that is.

Additionally, each of these four "goals" is an abstract idea itself, amounting to no more than (i) direct wireless communication, (ii) remote control, (iii) data collection and analysis, and (iv) data storage and transmission, respectively. (*See* OB at 11-14.) *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("collecting information, analyzing it, and displaying certain results of the collection and analysis" is an abstract idea); *Content Extraction*, 776 F.3d at 1347 ("storing . . . data in memory" is an abstract idea); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) ("transmission of information" is an abstract idea).

To the extent that Sensormatic points to any allegedly "narrower" feature of these abstract goals (*see* Opp'n at 11-14), those features are also directed to abstract ideas. Sensormatic relies heavily on the word "direct" as if this somehow transports wireless communication into a non-abstract realm. (*See* Opp'n at 11-12; *see also id.* at 7.) However, as Wyze explained, direct wireless communication is an abstract idea that can be performed by a human being using pen and paper. (OB at 12-14.) Wyze's argument—including its mailbox analogy—may be properly considered at this stage because the Court may "draw on its judicial experience and common sense" in assessing § 101 invalidity. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Direct wireless communication between devices is far from a "shift" or "advancement over the prior art" (Opp'n at 12); rather, it is no different from the

abstract idea of bypassing an intermediary to communicate information directly with an intended recipient, and Sensormatic identifies no new technology for accomplishing this.  Unlike the claims in *Thales Visionix Inc. v. U.S.*, which recited an unconventional configuration of inertial sensors and a novel method for calculating the location and orientation of an object relative to a moving platform, the claims here merely invoke conventional technologies to carry out the abstract idea of direct wireless communication.  850 F.3d 1343, 1344-45 (Fed. Cir. 2017).

The "automatic detect[ion] [of] a trigger event at any one of the ICDs" is likewise abstract.  (*See* Opp'n at 12-13.)  *Electric Power* is instructive—there, the Federal Circuit invalidated claims reciting methods of "detecting and analyzing events in real time."  830 F.3d at 1351-52; *see also CardioNet, LLC v. Scottcare Corp.*, 388 F. Supp. 3d 442, 467 (E.D. Pa. 2019) (invalidating claims directed to "collecting and analyzing information to detect and notify a user of an [] event"); *Specialized Monitoring Sols., LLC v. ADT LLC*, 367 F. Supp. 3d 575, 591 (E.D. Tex. 2019) (invalidating claims reciting "detecting a signal event of a protected area").  Sensormatic's assertion that automatic detection of trigger events is "not something that a human being could do without the assistance of technology" is simply wrong.  (*See* Opp'n at 13.)  Indeed, ancient Roman watchmen or more modern-day security guards can easily "detect[] trigger event[s] [that] may occur in any one of several locations" by observing properties from a well-placed vantage

5

point.  (*See id.*)  Further, the mere automation of event detection cannot confer patent eligibility, and instead results in a "quintessential 'do it on a computer' patent" that cannot survive § 101.  *See, e.g., Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

Nor does the "dual encoding" limitation improve computer functionality. Sensormatic does not claim to have invented a new or improved method of encoding inputs into multiple formats, and the sole Asserted Patent relating to dual encoding—the '370 patent—fails to describe any specialized technology to carry out this limitation.  (D.I. 1-1 at Ex. C, 15:39-16:16, Claims 1, 7.)  The fact that the claims here provide "a single input [] encoded in multiple distinct formats" is of no patentable significance under § 101.  (Opp'n at 14.)  This is no different from a multilingual translator who can translate a single sentence (*i.e.*, "input") into multiple distinct languages (*i.e.*, "formats").  *Yodlee, Inc. v. Plaid Techs. Inc.*, No. 14-1445-LPS, 2016 WL 2982503, at *25 (D. Del. May 23, 2016) (invalidating claims that "focused on the idea of translating data into a new form, but [] say[ing] almost nothing about *how that translation must occur*").  By specifying that these translations occur "simultaneously," '370 claim 7 merely "computerizes" the known idea of translating information—a step that cannot confer patent eligibility. *Intellectual Ventures*, 792 F.3d at 1370.

Tellingly, Sensormatic continues to describe the Asserted Patents using results-oriented, functional language that raises serious preemption concerns. (Opp'n at 11-12 (stating that the ICDs must be "capable of *direct* communication or *direct* cross-communication"), 16 (stating that the ICD must be "capable of performing a number of functions" and further stating that the ICD "must be configurable for two-way wireless communication").)   *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019).   Here, the broad claim language covers ***any*** wireless surveillance system that enables direct communication between devices.   *See id.*   Upholding the Asserted Patents would thus "risk disproportionately tying up the use of the underlying" abstract ideas of direct wireless communication and remote surveillance.   *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (citation omitted).

### C.   Sensormatic's Claims Recite No Inventive Concept

Sensormatic's arguments under *Alice* step two similarly confirm that the Asserted Patents claim only well-understood, routine, and conventional activities. Sensormatic insists that the ICD "is not just any generic component" (*see* Opp'n at 16), but the portions of the specifications Sensormatic cites describe only generic computer features and functions.   (D.I. 1-1 at Ex. A, 7:7-10:34 (describing the ICD as including "video technology ***commercially provided*** by PIXIM" and "at least two sensors and input ***means*** for image and/or video, and audio capture")

7

(emphases added); *accord id.* at Ex. B, 8:24-11:50; Ex. C, 6:65-10:24; Ex. D, 6:63-10:22; Ex. E, 7:21-10:47; Ex. F, 6:50-10:11; Ex. G, 7:1-10:34.)   Notably, Sensormatic fails to articulate any specific "non-conventional and non-generic arrangement" of "discrete *components* of an ICD, namely sensors" that purportedly provides an inventive concept.  (*See* Opp'n at 16.)  *See, e.g., Coqui Techs., LLC v. Gyft, Inc.*, No. 17-777-CFC-SRF, 2018 WL 6033479, at *6 (D. Del. Nov. 16, 2018).

Additionally, Sensormatic's identification of "cross-communication" and "two-way wireless communication" under *Alice* step 2 (*see* Opp'n at 16) violates the Federal Circuit's directive in *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018).  Merely "narrowing or reformulating an abstract idea"—such as wireless communication—cannot supply an inventive concept.  *Id.* at 1290-91.  Here, when properly excluding the abstract ideas from the claims, all that remain are indisputably routine and conventional computer components.  (*See* OB at 6.)

Sensormatic's arguments regarding the "single click-select" limitation in three patents are also meritless and inaccurate.  The word "surprising[]" that Sensormatic cites from the specifications actually refers to the ability of the "DIR device [to] function[] as an appliance"—not to the single click-select command activation.  (*See* D.I. 1-1 at Ex. E, 10:57-11:13; *id.* at Ex. F, 10:21-44; Ex. G,

10:44-67.)   In any event, Sensormatic does not—and cannot—point to any evidence that the claimed "single click-select" limitation operates in a nonconventional manner.   (*See* OB at 19.)   Rather, case law confirms that the "single click-select" command is a well-known and conventional computer activity.  *See, e.g., Trading Techs., Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1090-91, 1094-95 (Fed. Cir. 2019) (invalidating claims reciting "selecting" an item "through a single action of the user input device"); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 333 F. Supp. 2d 513, 517 (E.D. Va. 2004) (recognizing the "notoriety" of "Amazon's 1-Click feature").

Likewise, "dual encoding" is not inventive because it merely restates the abstract idea of translation.  *BSG*, 899 F.3d at 1291.  Under *BSG*, it is therefore "irrelevant" whether dual encoding "may have been non-routine or unconventional as a factual matter."  *Id; see also O2 Media, LLC v. Narrative Sci. Inc.*, 149 F. Supp. 3d 984, 996 (N.D. Ill. 2016) ("Processing information and presenting that information in a new format, ***regardless of whether it is one or more new formats***, is precisely the 'well-understood, routine, conventional activit[ies]' computers inherently perform") (emphasis added).

Sensormatic is further incorrect that "Wyze fails to address numerous other claim elements."   The "other claim elements"—"automatic detection of trigger events," "automatic remote activation," "dual encoding," and "direct cross-

9

communication" (*see* Opp'n at 18-19)—were addressed above and in Wyze's Opening Brief (OB at 11-16), and are impermissible reformulations of the abstract ideas. *See BSG*, 899 F.3d at 1290-91.

Lastly, Wyze showed, and Sensormatic failed to rebut, that the "ordered combination" of claim elements is not inventive. (OB at 21.) Courts consistently rely on similar ordered combination analyses to invalidate claims at *Alice* step two. *Alice*, 573 U.S. at 225; *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018).

### D. Resolution under § 101 is Appropriate at this Stage

Sensormatic's attempt to manufacture factual disputes to avoid judgment on the pleadings should be rejected. It is well-settled that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). In fact, the Federal Circuit has repeatedly affirmed early resolution of patent eligibility challenges. *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018). And here, Sensormatic fails to identify any specific disputed fact that precludes adjudication at this stage. *See Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("a court need not 'accept as true

10

allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification").

Further, Sensormatic is mistaken in asserting that claim construction is necessary at this stage. To the contrary, it is well-established that "[c]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction*, 776 F.3d at 1349. More importantly, Sensormatic does not identify any term requiring construction, much less propose construction for any terms. This alone is sufficient to reject Sensormatic's request for claim construction prior to §101 resolution. *Tenaha Licensing LLC v. Ascom (US) Inc.*, No. 19-568-LPS-SPF, 2020 WL 30427, at *8, n.6 (D. Del. Jan. 2, 2020) (rejecting plaintiff's argument for claim construction as "entirely conclusory" because "it presents no proposed constructions for the four terms it plucks from the claim language and fails to explain how construction of these terms would make any difference in the Section 101 inquiry") (citation removed); *see also Cyberfone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012).

## III.   CONCLUSION

Wyze respectfully requests that the Court grant its motion for judgment on the pleadings and dismiss Plaintiff's Complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____

Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
   *Attorneys for Defendant Wyze Labs, Inc.*

OF COUNSEL:

Reuben H. Chen
Lam Nguyen
Dena Chen
Lauren Krickl
Deepa Kannappan
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
(650) 843-5000

Erik Milch
COOLEY LLP
Reston Town Center
11951 Freedom Drive
14th Floor
Reston, VA 20190
(703) 456-8000

January 14, 2020

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 2,495 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Karen Jacobs*
_____
Karen Jacobs (#2881)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 14, 2020, upon the following in the manner indicated:

Steven J. Balick                                            *VIA ELECTRONIC MAIL*
Andrew C. Mayo
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
*Attorneys for Plaintiff*
*Sensormatic Electronics, LLC*

Jeffrey N. Costakos                                        *VIA ELECTRONIC MAIL*
Kadie M. Jelenchick
Kevin J. Malaney
Sarah E. Rieger
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI  53202-5306
*Attorneys for Plaintiff*
*Sensormatic Electronics, LLC*

/s/ *Karen Jacobs*
_____
Karen Jacobs (#2881)