IN THE UNITED STATES DISTRICT COURT00
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SENSORMATIC ELECTRONICS, LLC, | | |
| | Plaintiff, | |
| v. | | Civil Action No. 19-1543-CFC |
| WYZE LABS, INC., | | |
| | Defendant. | |

---

Steven Balick, Andrew Mayo, ASHBY & GEDDES, Wilmington, Delaware;
Jeffrey Costakos, Kadi Jelechick, Kevin Malaney, Sarah Rieger, FOLEY &
LARDNER LLP, Milwaukee, Wisconsin

*Counsel for Plaintiff*

Karen Jacobs, Cameron Clark, MORRIS, NICHOLS, ARSHT & TUNNELL LLP,
Wilmington, Delaware; Patricia Rogowski, ROGOWSKI LAW LLC, Wilmington,
Delaware; Reuben Chen, COOLEY LLP, Palo Alto, California

*Counsel for Defendant*

## **MEMORANDUM OPINION**

September 3, 2020
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Sensormatic Electronics, LLC has sued Defendant Wyze Labs, Inc.

for infringement of U.S. Patent Nos. 7,954,129 (the #129 patent); 7,730,534 (the

#534 patent); 7,936,370 (the #370 patent); 8,208,019 (the #019 patent); and

8,610,772 (the #772 patent). D.I. 1.[1] Pending before me is Wyze's motion for

judgment on the pleadings under Federal Rule of Civil Procedure 12(c). D.I. 21.

Wyze asserts that I should grant judgment in its favor because the asserted patents

are invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter.

## I.   BACKGROUND[2]

The asserted patents are directed to wireless surveillance systems for

monitoring a target environment and methods of operating such systems. D.I. 24

at 3; #129 patent at Abstract ("A surveillance system and method for remote

viewing of inputs associated with at least one wireless input capture device ICD(s)

monitoring a target environment . . . ."); #534 patent at Abstract ("A wireless

surveillance system and methods of operating same . . . ."); #370 patent at Abstract

---

[1] Sensormatic's Complaint also alleged infringement of U.S. Patent Nos. 8,610,772 and 9,407,877, but Sensormatic is no longer asserting those patents. D.I. 67 at 2.
[2] When assessing the merits of a Rule 12(c) motion for judgment on the pleadings, I accept as true all factual allegations in the pleadings and view those facts in the light most favorable to the Plaintiff. *See Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017) (citations omitted).

("A surveillance system and method . . . providing a secure surveillance system having wireless communication for monitoring a target environment with optimized remote viewing); #019 patent at Abstract ("A surveillance system and method with wireless communication between components . . . for monitoring a target environment."); #772 patent at Abstract ("A surveillance system and method . . . providing a secure surveillance system having wireless communication for monitoring a target environment with prioritization capabilities."). The asserted patents each explain that "[w]hile video surveillance systems . . . existed in the prior art, typically they [we]re wired devices that are difficult, time-consuming, and costly to install and operate." #129 patent at 1:31–33; #534 patent at 1:60–62; #370 patent at 1:33–35; #019 patent at 1:29–31; #772 patent at 1:56–58. To solve such problems with wired surveillance systems, the patents disclose "wireless surveillance system[s]" with certain characteristics. *See* #129 patent at 4:37–38 ("The present invention is directed to a wireless surveillance system and methods of operating same . . . ."); #370 patent at 4:29–30 (same); #019 patent at 4:26–27 (same); #772 patent at 4:53–54 (same); #534 patent at 2:15–16 ("The present invention provides a wireless surveillance system and method of operating same . . . .").

Claim 14 of the #129 patent recites:

14. A surveillance system for wireless communication between components comprising:

2

> a base system including at least two wireless input
> capture devices (ICDs), the ICDs having at least
> one sensor and at least one input component for
> detecting and recording inputs, a processor, a
> memory, a transmitter/receiver, all constructed and
> configured in electronic connection;
>
> wherein the ICDs are operable for direct wireless
> cross-communication with each other without
> requiring interaction with a remote server
> computer for operation;
>
> and wherein the ICDs are operable for direct
> wireless communication with a remote viewing
> device operable by an authorized user.

Claim 14 thus recites a surveillance system that comprises at least two wireless

devices that capture inputs about a target environment and that can communicate

directly with each other and with a remote viewing device operated by an

authorized user.

The remaining independent claims of the asserted patents recite wireless

surveillance systems with the same features recited in claim 14. But one or more

of the remaining independent claims also recites one or more of the following

additional components: a "digital input recorder" that receives, records, edits,

and/or stores data inputs from the input capture devices, *see, e.g.*, #129 patent at

claim 1, a "remote server computer" that the user uses to interface with the system

remotely, *see, e.g.*, #534 patent at claim 1, and a "digital video management and/or

recording device" that stores and takes action on data received from the input

3

capture devices, *see, e.g.*, *id.* And, one or more of the remaining independent claims also recites one or more of the following functions: "dual encoding"—i.e., converting—of system inputs from the input capture devices into multiple formats, *see, e.g.*, #370 patent at claim 1, activating the surveillance system remotely, *see, e.g.*, #534 patent at claim 1, activating the surveillance system automatically with a "single click-select command," *see, e.g.*, #772 patent at claim 1, "automatically detecting" a predefined "trigger event" that occurs at any of the input capture devices, *see, e.g.*, #019 patent at claim 1, and "image tagging or flagging based upon the occurrence of a trigger event," *see, e.g.*, *id.*

## II.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Int'l Bus. Machines Corp. v. Groupon, Inc.*, 289 F. Supp. 3d 596, 600 (D. Del. 2017) (citations omitted). "A motion for judgment on the pleadings should be granted if the movant establishes that there are no material issues of fact, and [the movant] is entitled to judgment as a matter of law." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (internal quotation marks and citations omitted). "In considering a motion for judgment on the pleadings, a court must accept all of the

allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id.* at 417–18 (citations omitted).

**B.   Patent-Eligible Subject Matter**

Section 101 of the Patent Act defines patent-eligible subject matter.  It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.

There are three judicially created limitations on the literal words of § 101. The Supreme Court has long held that laws of nature, natural phenomena, and abstract ideas are not patentable subject matter.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  These exceptions to patentable subject matter arise from the concern that the monopolization of "the[se] basic tools of scientific and technological work" "might tend to impede innovation more than it would tend to promote it."  *Id.* (internal quotation marks and citations omitted).

"[A]n invention is not rendered ineligible for patent [protection] simply because it involves an abstract concept."  *Id.* at 217.  "Applications of such concepts to a new and useful end . . . remain eligible for patent protection."  *Id.* (internal quotation marks, alterations, and citations omitted).  But "to transform an

5

unpatentable law of nature [or abstract idea] into a patent-eligible application of such a law [or abstract idea], one must do more than simply state the law of nature [or abstract idea] while adding the words 'apply it.'" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72 (2012) (emphasis removed).

In *Alice*, the Supreme Court established a two-step framework by which courts are to distinguish patents that claim eligible subject matter under § 101 from patents that do not claim eligible subject matter under § 101. The court must first determine whether the patent's claims are drawn to a patent-ineligible concept— i.e., are the claims directed to a law of nature, natural phenomenon, or abstract idea? *Alice*, 573 U.S. at 217. If the answer to this question is no, then the patent is not invalid for teaching ineligible subject matter. If the answer to this question is yes, then the court must proceed to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (alteration in original) (internal quotations and citations omitted).

## III.   DISCUSSION

I find that the asserted patents in this case are invalid under § 101 because they are directed to the abstract ideas of wireless communication and remote

6

surveillance and they do not contain an inventive concept.

## A.   *Alice* Step One

Starting at step one of the *Alice* analysis, I agree with Wyze that the asserted patents are directed to the abstract ideas of wireless communication and remote surveillance.[3]

First, the asserted patents' disclosure of wireless surveillance systems is directed to the abstract idea of communicating information wirelessly.  The asserted patents are similar to a patent that the Federal Circuit invalidated in *Chamberlain Group, Inc. v. Techtronic Industries Co.*, 935 F.3d 1341 (Fed. Cir. 2019).  The asserted patent in *Chamberlain* was directed to the abstract idea of "wirelessly communicating status information about a system" because, the Federal Circuit explained, "[t]he only described difference between the prior art . . . systems and the claimed . . . system [wa]s that the status information about the system [wa]s communicated wirelessly, in order to overcome certain undesirable disadvantages of systems using physical signal paths."  *Id.* at 1346.  Similarly here,

---

[3] Courts often invalidate patents that are directed to a combination of abstract ideas.  *See, e.g., FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094–95 (Fed. Cir. 2016) ("Here, the claims are directed to a combination of these abstract-idea categories."); *Control v. Digital Playground, Inc.*, 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016) ("[T]he concepts of remote surveillance, remote control, and the recording and transmission of audio and video and other data are clearly 'longstanding commercial practice[s].'  Simply combining these abstract ideas does not create a non-abstract idea." (citation omitted)).

the asserted patents' written descriptions explain that the claimed systems and methods take the prior art wired video surveillance systems and make them wireless to avoid the disadvantages of wired systems. #129 patent at 1:31–33; #534 patent at 1:60–62; #370 patent at 1:33–35; #019 patent at 1:29–31; #772 patent at 1:56–58.

Sensormatic asserts that the patents are not directed to the abstract idea of wireless communication because the asserted patents are directed to direct wireless communication (i.e., device-to-device wireless communication) as opposed to indirect wireless communication (i.e., wireless communication through a server). D.I. 24 at 11–12. I disagree. The Federal Circuit held in *Chamberlain* that "the broad concept of communicating information wirelessly, without more, is an abstract idea" without distinguishing indirect from direct wireless communication. 935 F.3d at 1347. Moreover, like indirect wireless communication, direct wireless communication merely takes information previously transmitted via a wire and transmits that information wirelessly. And both direct and indirect wireless communication were basic conventional forms of communication at the time of the invention. #129 patent at 1:52–58, 2:50–3:3. "[T]hat the claimed invention transmits data wirelessly and therefore does not rely on a wired path is . . . simply a feature of wireless communication, which . . . was already a basic, conventional form of communication." *Chamberlain*, 935 F.3d at 1347. Sensormatic's claimed

8

systems and methods do not improve direct wireless communication or apply direct wireless communication in a new way and thus they are directed to the abstract idea of wireless communication.

Second, the asserted patents' disclosure of wireless surveillance systems for monitoring a target environment is also drawn to the abstract idea of remote surveillance—that is, monitoring an environment for security or control purposes by collecting and analyzing data about the environment. Monitoring activity for security or control purposes is a "longstanding" and "fundamental" human activity that falls "squarely within the realm of abstract ideas." *Alice*, 573 U.S. at 220–21. "[T]he general concept of keeping watch over property is timeless. As early as 31 BC, for example, the Romans monitored and secured their empire through numerous watchtowers, which could communicate through a signaling system." *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 727 (N.D. Ill. 2016) (citing P. Southern, *Signals versus Illumination on Roman Frontiers*, 21 Britannia, 233–42 (1990)). Moreover, the asserted patents are similar to patents that the Federal Circuit invalidated in *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089 (Fed. Cir. 2016). The patents in *FairWarning IP* were directed to the abstract idea of "collecting and analyzing information to detect misuse and notifying a user when misuse is detected." *Id.* at 1094. Here, the asserted patents teach collecting and analyzing information about a target

9

environment for remote surveillance purposes. *See* #534 patent at claim 1 (reciting an input capture device that "captur[es] data input from activities within a target environment"); #129 patent at claim 1 (reciting "a data processor" that receives and records data inputs from the input capture devices); #019 patent at claim 1 (reciting "wherein the direct cross-communication of ICDs includes data exchange [of] information about the surveillance environment"); #772 patent at Abstract (reciting a system "providing for input capture and data transmission thereby providing a secure surveillance system").

Sensormatic asserts that "the claimed inventions are directed not just to wireless communication and surveillance generally, but more specifically to providing system capture devices that can communicate with each other, simplifying set-up and control of surveillance systems, allowing for comparison of data inputs from multiple, remotely-located input devices, and securing the storage and transmission of data for the system's input devices." D.I. 24 at 10–11 (citations omitted).

Those four functions, however, are merely features or results of the claimed abstract concepts of wireless communication and remote surveillance and thus they do not take the asserted patents beyond those concepts. *See Chamberlain*, 935 F.3d at 1347 (holding that a limitation did not take an invention beyond an abstract idea because the limitation "[wa]s not itself a technological improvement, but

10

rather simply a feature of [the abstract idea]"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101."). First, the function of "providing system capture devices that can communicate with each other" is merely the application of the abstract idea of direct wireless communication—i.e., the function of providing generic devices that communicate directly with each other wirelessly. Second, the function of "simplifying set-up and control of surveillance systems" is a result of the abstract idea of direct wireless communication. Finally, the functions of "allowing for comparison of data inputs from multiple remotely-located input devices" and "securing the storage and transmission of data for the systems' input devices" are just features of the abstract idea of remote surveillance—i.e., collecting and analyzing data regarding the environment being surveilled.

Finally, the remaining claim limitations recited in the asserted patents also do not take the patents beyond the claimed abstract ideas. Similar to the functions that Sensormatic cites, the remaining limitations are merely features of the abstract ideas of wireless communication and remote surveillance; they also constitute abstract ideas themselves. For example, the limitation reciting "image tagging or flagging based upon the occurrence of a trigger event," #019 patent at claims 1, 2, 7, is an implementation of the abstract idea of remote surveillance; it is also

11

directed to "the abstract idea of classifying and storing digital images in an
organized manner," *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611
(Fed. Cir. 2016). The #019 patent's written description explains that the "image
tagging or flagging" based on a "trigger event" can "mark the start of a subset of
the input captured by the [input capture device]s and/or stored by the DIR for
facilitating analysis and review at a later time." #019 patent at 15:56–59. In other
words, when a certain triggering event occurs, the claimed system will record and
organize the images and data surrounding the event. That function is a typical
feature of a surveillance system, and it amounts to nothing more than the abstract
idea of classifying and organizing images by tagging them and storing them.

The claimed "dual encoding of system inputs" in claim 1 of the#370 patent
is drawn to the abstract idea of translating information between different formats.
*See Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, 2015 WL 5156526, at
*2 (D. Del. Sept. 2, 2015), *aff'd*, 669 F. App'x 555 (Fed. Cir. 2016) (invalidating
claims directed to the abstract idea of "translation"). The #370 patent recites a
wireless surveillance method that includes a step of "dual encoding" inputs in one
format into multiple different formats. #370 patent at claim 1, 15:43–44. Dual
encoding between formats on a computer is just the application of the abstract idea
of translating on a computer. Sensormatic asserts that the dual encoding function
is not abstract because it does not merely translate from one format to another;

instead, it converts a single input into multiple distinct formats. D.I. 24 at 13–14.

Converting an input into multiple formats as opposed to a single format, however,

is nothing more than translating.

The intrinsic record thus establishes that the asserted patents are directed to

the abstract ideas of wireless communication and remote surveillance and none of

the claim limitations take the claims beyond those abstract ideas.

**B.** *Alice* **Step Two**

Turning, then, to the second step of the *Alice* analysis, the question is

whether the asserted patents claim an inventive concept sufficient to ensure that the

patent in practice teaches significantly more than mere wireless communication

and remote surveillance. In *Alice*, the Court considered at step two "the

introduction of a computer into the claims" and held that "the mere recitation of a

generic computer [in the claims] cannot transform a patent-ineligible abstract idea

into a patent-eligible invention." 573 U.S. at 222–23.[4]  Thus, the use of "a generic

---

[4] The Federal Circuit has at times considered computer functionality at step one of the *Alice* inquiry and at times at step two. *Compare Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("Therefore, we find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis."), *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315–16 (Fed. Cir. 2019) (considering introduction of computer functionality into claims at step one of *Alice* inquiry), *and TLI Commc'ns*, 823 F.3d at 611–13 (same), *with Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1094 (Fed. Cir. 2019) (considering whether the claims "improve computer functionality" at step two), *Intellectual Ventures I*, 838 F.3d at 1320 (considering whether "the asserted claim improve[s]

computer to perform generic computer functions" does not provide the requisite inventive concept to satisfy step two of the *Alice* analysis.  *Id.* at 225.

In this case, the asserted patents merely perform the abstract concepts of wireless communication and remote surveillance using generic computer functionalities; and they therefore fail *Alice*'s step two inquiry.  The claimed wireless surveillance systems and methods consist of components such as input capture devices, remote server computers, digital input recorders (DIRs), remote viewing devices, and digital video management devices.  *See, e.g.*, #129 patent at claim 1; #534 patent at claim 1.  And those components are described in the asserted patents as off-the-shelf, pre-existing computer components that Sensormatic does not claim to have invented.  #129 patent at 9:7–14 ("Preferred embodiments of a system according to the present invention includes video technology commercially provided by PIXIM."); *id.* at 13:50–53 ("[T]he RSC is thus any Internet connectable device including computer, PDA, cell phone . . . ."); *id.* at 10:42–43 ("[T]he DIR may also be referred to as a digital video recorder device (DVR).").  The patents also describe those components as performing

---

or change[s] the way a computer functions" at step two), *and Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (finding that "the claims may be read to improve an existing technological process" at step two (internal quotation marks and alteration omitted)).  I will follow the Supreme Court's lead in *Alice* and consider computer functionality at step two.

nothing more than conventional computer functions. *See id.* at 6:59–61 (describing the wireless input capture device as performing the conventional computer functions of "sensing, capturing, and transmitting surveillance inputs"); *id.* at 5:15–17 (describing the digital input receiver as performing the conventional computer functions of "receiving, storing, editing, and/or retrieving stored input" from the ICD); *see also* #534 patent at 3:17–20, 3:43–45, 5:15–18.

Sensormatic argues that the claimed input capture device "is not just any generic component—it must contain a number of specific features and be capable of performing a number of functions in order to fall within the scope of the patents' claims." D.I. 24 at 16. Sensormatic, however, does not define those "specific features" of the input capture device. The sections of the written description cited by Sensormatic describe the input capture device and the components of the input capture device —i.e., a sensor, an input component, a processor, memory, and a transmitter/receiver—as generic or commercially-available features. #129 patent at 7:14–24, 8:65–9:14. And the combination of those generic components does not constitute an inventive concept. Sensormatic also notes that the input capture device must "be capable of cross-communication . . . and two-way wireless communication with other devices." D.I. 24 at 16. Those capabilities, however, are just subsets of the abstract idea of wireless communication and thus they do not take the invention beyond the abstract idea.

Sensormatic also asserts that Wyze "fails to account for a large number of claim elements (either in isolation or in combination) that may provide an inventive concept." D.I. 24 at 18. The only elements that Sensormatic identifies, however, are the claimed "direct cross-communication," "automatic detection of trigger events," "automatic remote activation," "dual encoding," and "single-click select" functionalities. D.I. 24 at 17, 18–19. Wyze *did* address those claim elements and I agree with Wyze that those elements merely implement abstract ideas using generic components.

First, direct cross-communication is a subset of direct wireless communication and does not constitute an inventive concept. It is undisputed that direct wireless communication was a conventional form of wireless communication at the time of the invention and the asserted patents do not purport to improve how direct wireless communication is accomplished or apply the concept of direct wireless communication in a new way. Instead, the asserted patents implement direct wireless communication using pre-existing, commercial "protocols" such as Bluetooth and other generic components. *See* #534 patent at 3:14–17 ("The ICD transmits the data wirelessly (using network protocols such as 802.11, cell phone protocols such as CDMA or GSM, or any other wireless protocol such as Zigbee, Bluetooth, or other) to a DVM . . . .").

Second, the "automatic detection of trigger events" claim limitation, #019

16

patent at claims 1, 2, is a feature of the abstract idea of remote surveillance and the mere automation and distribution of event detection using generic components does not provide an inventive step. *See Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (holding that automating an abstract idea "does not render it any less abstract"). The patent does not explain how the automatic detection at multiple locations is achieved beyond the use of generic components.

Third, the automatic remote activation limitation only adds to the claimed wireless surveillance systems the conventional step of automatically activating the system with a remote computer. *See* #534 patent at claim 1 (reciting "automatically activating the system based on inputs provided through a user interface on a remote computer"). The asserted patents do not explain how the remote activation is performed beyond the use of generic computer components.

Fourth, the #370 patent's dual encoding limitation does nothing more than add the abstract idea of translation to the wireless surveillance systems using generic components. The #370 patent does not claim to have invented a new or improved method of encoding inputs into multiple formats; nor does it describe any specialized technology to perform dual encoding. The written description explains that the "dual encoding software run[s] on an embedded DSP chip or a computer" and "encodes inputs captured by the [input capture device](s) in

17

multiple formats simultaneously." #370 patent at 15:41–44.  The asserted patents never specify the form of the embedded DSP chip or computer; they are just conventional computer components that implement abstract ideas.

Finally, the #772 patent's claimed "single click-select command" activation functionality, #772 patent at claims 1–9, 14–17, does nothing more than add to the claimed wireless surveillance systems the function of activating the system by "selecting" an item on a graphical user interface using a mouse click.  That function is a well-known computer functionality and the patents do not describe anything unique such as specialized hardware or software that would make this feature non-conventional.  *See Trading Techs. Int'l*, 921 F.3d at 1093  ("[S]electing . . . an icon is [a] well-understood, routine, conventional activity.").[5]

Considered individually and as an ordered combination, therefore, the claim elements of the asserted patents teach nothing more than the performance of "well-understood, routine, and conventional activities previously known to the industry."

_____

[5] Sensormatic asserts that "[t]he patents themselves note that the capability for single click activation was a 'surprising[]' advancement over the prior art.  D.I. 24 at 17 (citing #772 patent at 10:57–11:13).  The "surprising[]" that Sensormatic cites, however, refers to the ability of the "DIR device [to] function[] as an appliance"—not to the single click-select command activation.  *See* #772 patent at 10:57–61.  Sensormatic does not argue that the ability of the DIR to function as an appliance is an inventive concept.  And for good reason.  The DIR is a generic component of the claimed systems and methods and the patentee does not purport to have invented DIR's ability to act as an appliance; nor does the patent even explain what causes DIR to act as an appliance.  *See* #772 patent at 10:49–61.

*Alice*, 573 U.S. at 225 (internal quotation marks and citation omitted).  The claimed wireless surveillance systems and methods do not improve how the abstract ideas of wireless communication and remote surveillance are accomplished or apply those concepts in a new way; the systems and methods merely implement the abstract ideas of wireless communication and remote surveillance using well-known, generic computer components and functionalities.

Because the asserted patents are directed to abstract ideas and do not contain an inventive concept, the asserted patents are invalid for failing to claim patentable subject matter under § 101.[6]

## IV.   CONCLUSION

For the foregoing reasons, I will grant Sensormatic's motion for judgment on the pleadings for patent invalidity under § 101.  D.I. 21.

The Court will issue an Order consistent with this Memorandum Opinion.

---

[6] Sensormatic argues that "[a]t a minimum, claim construction is required before any decision on patentability can be reached."  D.I. 24 at 21.  But Sensormatic never identified a claim construction issue that required resolution before I could rule on the present motion; and tellingly, Sensormatic stated in connection with claim construction briefing that "no claim term(s)/phrase(s)" require construction. D.I. 60, Ex. A at 1.